STROUD, Judge.
*530 Wiley Christopher Stancill ("defendant") appeals from an ex parte domestic violence protective order and a domestic violence protective order, in which the trial court found that he had committed an act of domestic violence against Lori Dennis Stancill ("plaintiff"). We affirm in part, vacate in part, and remand.
I. Background
In 1985, plaintiff and defendant married. From July 2007 to December 2007, plaintiff and defendant were separated but then reconciled and resumed living together. Plaintiff alleges that in 2007 or 2008, defendant confessed that he had tried to kill plaintiff during this period of separation. In July 2013, plaintiff and defendant separated again. In July or August 2013, defendant sent plaintiff a text message, which stated, "I am killing myself. I need you [.]" In April 2014, defendant texted plaintiff: "I invited you to come home time and time again. Take the *892 wrath that comes." In May 2014, defendant sent plaintiff several similar text messages.
On 28 May 2014, plaintiff filed a verified complaint alleging that defendant placed her in fear of imminent serious bodily injury and in *531 fear of continued harassment that rises to such a level as to inflict substantial emotional distress. That day, a district court judge conducted an ex parte hearing and entered an ex parte domestic violence protective order ("ex parte DVPO"), in which the judge concluded that defendant had committed an act of domestic violence against plaintiff and ordered that defendant surrender all firearms, ammunition, and gun permits.
On 6 June 2014, a different district court judge conducted a hearing, in which both parties participated and presented testimony. That day, the judge entered a domestic violence protective order ("DVPO"), in which the judge found that defendant had committed an act of domestic violence against plaintiff and ordered that defendant surrender all firearms, ammunition, and gun permits. On 30 June 2014, defendant requested an audio recording of the ex parte DVPO hearing for the purpose of preparation of the transcript for appeal, but the trial court denied his request because no recording of the hearing had been made. On 30 June 2014, defendant gave timely notice of appeal.
II. Standard of Review
We review both an ex parte DVPO and a DVPO to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal." Hensey v. Hennessy, 201 N.C.App. 56, 59, 685 S.E.2d 541, 544 (2009). "While the trial court need not set forth the evidence in detail[,] it does need to make findings of ultimate fact which are supported by the evidence; the findings must identify the basis for the 'act of domestic violence.' " Kennedy v. Morgan, 221 N.C.App. 219, 224, 726 S.E.2d 193, 196 (2012).
Where the trial court sits as the finder of fact, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial court.
This Court can only read the record and, of course, the written word must stand on its own. But the trial judge is present for the full sensual effect of the spoken word, with the nuances of meaning revealed in pitch, mimicry and gestures, appearances and postures, shrillness and stridency, calmness and composure, all of which add to or detract from the force of spoken words.
*532 The trial court's findings turn in large part on the credibility of the witnesses, and must be given great deference by this Court.
Brandon v. Brandon, 132 N.C.App. 646, 651-52, 513 S.E.2d 589, 593 (1999) (citations, quotation marks, and brackets omitted). We review de novo issues of statutory interpretation. Moore v. Proper, 366 N.C. 25, 30, 726 S.E.2d 812, 817 (2012). We review the two orders independently of one another. Hensey, 201 N.C.App. at 66, 685 S.E.2d at 548-49.
III. Ex Parte DVPO
With respect to the ex parte DVPO, defendant contends that the trial court erred in (1) failing to record the ex parte DVPO hearing; (2) failing to make specific findings of fact as to every element of fear of continued harassment, one of its grounds for concluding that defendant committed an act of domestic violence; and (3) ordering defendant to surrender all firearms, ammunition, and gun permits.
A. Failure to Record
i. Analysis
Defendant contends that the trial court erred in failing to record the ex parte DVPO hearing. Relying on Hensey, plaintiff responds that the trial court did not need to record the hearing. See id. at 60, 685 S.E.2d at 545. But Hensey is distinguishable. There, the defendant-appellant contended that the trial court erred in failing to "hear any evidence, but instead based the ex parte DVPO only upon the verified complaint[.]" Id. at 59, 685 S.E.2d at 544. But the record *893 in Hensey indicated that a hearing of some sort did in fact take place, and it did not show that the defendant had even requested a copy of a recording of the hearing. See id. at 60, 685 S.E.2d at 545. Although "we recognize[d] the possibility that no transcript of that hearing was available to the parties[,]" we followed the general rule that when the appellant fails to include in the appellate record the evidence necessary to review its issue, we do not presume error. Id., 685 S.E.2d at 545. The issue of whether the ex parte DVPO hearing should have been recorded was not presented or addressed in Hensey. Id., 685 S.E.2d at 545.
In contrast, here, defendant specifically requested a copy of an audio recording of the ex parte DVPO hearing, but his request was denied because the trial court made no such recording. We have previously held that
*533 while it is the appellant's responsibility to make sure that the record on appeal is complete and in proper form, where the appellant has done all that she can to do so, but those efforts fail because of some error on the part of our trial courts, it would be inequitable to simply conclude that the mere absence of the recordings indicates the failure of appellant to fulfill that responsibility.
Coppley v. Coppley, 128 N.C.App. 658, 663, 496 S.E.2d 611, 616 (citation, quotation marks, and brackets omitted), disc. review denied, 348 N.C. 281, 502 S.E.2d 846 (1998).
Additionally, we distinguish this case from In re L.B. and In re Clark, where this Court held that, where a transcript is unavailable, the appellant had a duty "to compile a narration of the evidence, i.e., reconstructing the testimony with the assistance of those persons present at the hearing." See L.B., 184 N.C.App. 442, 452, 646 S.E.2d 411, 417 (2007) ; Clark, 159 N.C.App. 75, 80, 582 S.E.2d 657, 660 (2003). Neither of those cases involved an ex parte hearing. There is practically no way that a defendant could reconstruct the testimony presented at an ex parte hearing in which he did not appear or participate. By requesting a copy of the recording for preparation of a transcript, defendant "has done all that [he] can" to ensure the record is complete. See Coppley, 128 N.C.App. at 663, 496 S.E.2d at 616. Accordingly, we must examine N.C. Gen.Stat. § 7A-198 to determine if the trial court erred in failing to record the ex parte DVPO hearing. See id., 496 S.E.2d at 616.
N.C. Gen.Stat. § 7A-198 provides in pertinent part as follows:
(a) Court-reporting personnel shall be utilized, if available, for the reporting of civil trials in the district court. If court reporters are not available in any county, electronic or other mechanical devices shall be provided by the Administrative Office of the Courts upon request of the chief district judge.
....
(c) If an electronic or other mechanical device is utilized, it shall be the duty of the clerk of the superior court or some other person designated by him to operate the device while a trial is in progress, and the clerk shall thereafter preserve the record thus produced, which may be transcribed, as required, by any person designated by the Administrative Office of the Courts. If stenotype, *534 shorthand, or stenomask equipment is used, the original tapes, notes, discs, or other records are the property of the State, and the clerk shall keep them in his custody.
(d) Reporting of any trial may be waived by consent of the parties.
(e) Reporting will not be provided in trials before magistrates or in hearings to adjudicate and dispose of infractions in the district court.
....
(g) ...
In the event that the recording device in a civil trial conducted without a court reporter fails for any reason to provide a reasonably accurate record of the trial for purposes of appeal, then the trial judge shall grant a motion for a new trial made by a losing party whose request pursuant to this section to share the cost of a court reporter was not consented to by the opposing party.
N.C. Gen.Stat. § 7A-198 (2013). In evaluating whether the trial court should have recorded the ex parte DVPO hearing, we must determine whether the ex parte DVPO hearing *894 constitutes a "civil trial" under N.C. Gen.Stat. § 7A-198.
In Miller v. Miller, this Court held that a hearing on a motion to modify a child custody order was a "civil trial" under N.C. Gen.Stat. § 7A-198. Miller, 92 N.C.App. 351, 354, 374 S.E.2d 467, 469 (1988). In Coppley, this Court held that a five-minute proceeding as to whether both parties agreed to a consent order was not a "civil trial" under N.C. Gen.Stat. § 7A-198. Coppley, 128 N.C.App. at 662, 496 S.E.2d at 615. But in Coppley, this Court also held that a later hearing on a motion to set aside the consent order pursuant to North Carolina Rule of Civil Procedure 60(b) was a "civil trial" which should have been recorded under N.C. Gen.Stat. § 7A-198. Id. at 663, 496 S.E.2d at 616.
A trial court may enter an ex parte DVPO to protect the plaintiff "if it clearly appears to the court from specific facts shown, that there is a danger of acts of domestic violence against the [plaintiff.]" N.C. Gen.Stat. § 50B-2(c)(1) (2013). The trial court must hold a hearing prior to issuing an ex parte DVPO. Hensey, 201 N.C.App. at 60, 685 S.E.2d at 545 (discussing N.C. Gen.Stat. § 50B-2(c)(6) ). After receiving evidence, the trial court must make findings of fact and conclusions of law, although it *535 may refer to the plaintiff's complaint. See id. at 64, 685 S.E.2d at 547. The trial court is required to receive evidence at this hearing; unlike a temporary restraining order under North Carolina Rule of Civil Procedure 65[1] , the ex parte dvpo cannot be issued based ONLY UPON A VERIFIED pleading or affidavit. Id. at 60, 685 S.E.2d at 545 ; see also N.C. Gen.Stat. § 1A-1, Rule 65. Because the trial court receives evidence at an ex parte DVPO hearing, we hold that an ex parte DVPO hearing is more analogous to a hearing on a motion to modify a child custody order, like the hearing in Miller, or a hearing on a Rule 60(b) motion to set aside a consent order, like the second hearing in Coppley, than a cursory five-minute proceeding as to whether both parties agree to a consent order, like the first hearing in Coppley. See Miller, 92 N.C.App. at 354, 374 S.E.2d at 469 ; Coppley, 128 N.C.App. at 662-63, 496 S.E.2d at 615-16.
In addition, the standard of review for an ex parte DVPO is for this Court to consider whether competent evidence supports the trial court's findings of fact and whether those findings support its conclusions of law. Hensey, 201 N.C.App. at 59, 685 S.E.2d at 544. We cannot review whether the evidence presented at an ex parte DVPO hearing supports the trial court's findings of fact if there is no recordation of that hearing. We thus hold that the ex parte DVPO hearing constitutes a "civil trial" under N.C. Gen.Stat. § 7A-198.
This interpretation is also supported by N.C. Gen.Stat. § 7A-198(e). N.C. Gen.Stat. § 7A-198(e) specifically excludes certain types of hearings from recordation: "Reporting will not be provided in trials before magistrates or in hearings to adjudicate and dispose of infractions in the district court." N.C. Gen.Stat. § 7A-198(e). Thus, the general rule is that reporting will be provided in civil trials before district court judges. See id. Here, a district court judge signed the ex parte DVPO. Accordingly, we find that N.C. Gen.Stat. § 7A-198(e) required that the ex parte DVPO hearing be recorded.
We recognize that "[t]he chief district court judge may authorize a magistrate or magistrates to hear any motions for emergency relief ex parte." Id. § 50B-2(c1). But we note that an ex parte DVPO entered by a magistrate "shall expire and the magistrate shall schedule an ex *536 parte hearing before a district court judge by the end of the next day on which the district court is in session in the county in which the action was filed." Id. The district court judge then must follow the ex parte DVPO procedures outlined in N.C. Gen.Stat. § 50B-2(c). Id. Chapter 50B makes a distinction between magistrates and district court judges in the procedure for issuing an ex parte DVPO, and this distinction *895 fits in with the requirements of recordation under N.C. Gen.Stat. § 7A-198. Viewing N.C. Gen.Stat. § 7A-198(e) and N.C. Gen.Stat. § 50B-2(c1) in conjunction, an ex parte DVPO hearing before a magistrate need not be recorded, but an ex parte DVPO hearing before a district court judge must be recorded. See id. §§ 7A-198(e), 50B-2(c1). The interaction of these statutes supports our reading of the recordation requirements of N.C. Gen.Stat. § 7A-198. Accordingly, we hold that the trial court erred in failing to record the ex parte DVPO hearing.
ii. Prejudice
To prevail on appeal, defendant must demonstrate how the trial court's failure to record the ex parte DVPO hearing prejudiced him. See Coppley, 128 N.C.App. at 663, 496 S.E.2d at 616. Defendant first argues that the lack of a record prevents this Court from determining whether sufficient evidence supports the trial court's findings of fact. Defendant specifically asserts that nothing in plaintiff's verified complaint supports the trial court's order that "defendant shall not assault, threaten, abuse, follow, harass ..., or interfere with the plaintiff." But this statement is a decretal provision, not a finding of fact. Moreover, none of the trial court's findings of fact extend beyond the allegations in plaintiff's verified complaint, which also incorporated her statement and defendant's text messages. In this particular case, where the findings of fact did not go beyond the allegations of the plaintiff's complaint, we hold that plaintiff's verified complaint supported the trial court's findings of fact and thus defendant cannot show that he was prejudiced by any other evidence which may have been presented at the ex parte DVPO hearing, at least as to the issuance of the order generally.
Defendant next argues that the lack of a record of the ex parte DVPO hearing was prejudicial because it prevented him from impeaching plaintiff with prior inconsistent statements during the DVPO hearing. But defendant requested a record of the ex parte DVPO hearing on 30 June 2014, a few weeks after the 6 June 2014 DVPO hearing. While it would be reasonable that a defendant may want to cross-examine a plaintiff as to any inconsistences in her statements, the defendant would need to obtain the recording before the DVPO hearing to have the opportunity to do this. Where the defendant has not requested the *537 recording prior to the DVPO hearing, we cannot assume prejudice from the unavailability of the recording for purposes of impeachment at the later hearing. And even if we were to assume arguendo that the trial judge who presided over the ex parte DVPO hearing may have been influenced by a statement that plaintiff made during that hearing which plaintiff did not repeat during the DVPO hearing, we hold that there still would be no prejudice here, since a different trial judge presided over the DVPO hearing. There is no possibility that the trial court relied for purposes of the DVPO upon his own recollection of the prior ex parte DVPO hearing.[2] Accordingly, we hold that defendant has failed to show prejudice under Coppley as to the issuance of the ex parte DVPO generally.[3] See id. at 663, 496 S.E.2d at 616.
Although defendant has failed to show prejudice in this case, we caution the trial courts that the correct practice is to record ex parte DVPO hearings pursuant to N.C. Gen.Stat. § 7A-198. We also realize that recording equipment available to the various district courts across the state varies, as do the normal practices of those courts, but *896 N.C. Gen.Stat. § 7A-198 does require recordation of civil trials before district court judges. The ex parte DVPO may be short-lived, but it has a potentially long-lasting and serious impact on a defendant, whether or not a DVPO is later issued. See Hensey, 201 N.C.App. at 61, 685 S.E.2d at 545 ("An ex parte DVPO, although brief in duration, can have a tremendous effect upon a defendant. An ex parte DVPO requiring a defendant not to assault, threaten, abuse, follow, harass, or interfere with the plaintiff should not impose any particular hardship upon the defendant; however, the ex parte DVPO may also require a defendant to, inter alia, leave his or her home, stay away from his or her children, give up possession of a *538 motor vehicle, and surrender his or her firearms, ammunition, and gun permits to the sheriff. In addition, a defendant who knowingly violates a valid protective order, including an ex parte DVPO, may be charged with a class A1 misdemeanor or with various felonies for certain violations." (quotation marks and ellipsis omitted)). Because a defendant has no opportunity to be present at the ex parte DVPO hearing, the only way to protect his rights as to that hearing and to have even the possibility of adequate appellate review of the ex parte proceedings and ex parte DVPO is to preserve a record of it.
B. Findings of Fact
Defendant contends that in the ex parte DVPO, the trial court erred in failing to include specific findings of fact as to every element of fear of continued harassment, as described in N.C. Gen.Stat. §§ 14-277.3A(b)(2), 50B-1(a)(2) (2013).[4] "While the trial court need not set forth the evidence in detail[,] it does need to make findings of ultimate fact which are supported by the evidence; the findings must identify the basis for the 'act of domestic violence.' " Kennedy, 221 N.C.App. at 224, 726 S.E.2d at 196. "[U]ltimate facts ... are determinative of the questions raised in the action and essential to support the conclusions of law reached. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense." See id., 726 S.E.2d at 196. The trial court accomplished this task by referring to plaintiff's statement and defendant's text messages, which plaintiff attached to her complaint, and by making a finding of ultimate fact that defendant placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress, thereby identifying a basis for its conclusion of law that defendant committed an act of domestic violence.[5] See N.C. Gen.Stat. § 50B-1(a)(2). Accordingly, we hold that the trial court did not err in failing to include specific findings of fact as to every element of fear of continued harassment. See Kennedy, 221 N.C.App. at 224, 726 S.E.2d at 196.
*539 C. Surrender of Firearms
Defendant contends that in the ex parte DVPO, the trial court erred in ordering defendant to surrender all firearms, ammunition, and gun permits. N.C. Gen.Stat. § 50B-3.1(a) discusses when a trial court may order a defendant to surrender all firearms:
Upon issuance of an emergency or ex parte order pursuant to this Chapter, the court shall order the defendant to surrender to the sheriff all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms that are in the care, custody, possession, ownership, or control of the defendant if the court finds any of the following factors:
(1) The use or threatened use of a deadly weapon by the defendant or a pattern of prior conduct involving the use or threatened *897 use of violence with a firearm against persons.
(2) Threats to seriously injure or kill the aggrieved party or minor child by the defendant.
(3) Threats to commit suicide by the defendant.
(4) Serious injuries inflicted upon the aggrieved party or minor child by the defendant.
N.C. Gen.Stat. § 50B-3.1(a) (2013). Based upon subsection (a)(3), the trial court found that defendant had made a threat to commit suicide in support of its decision to order defendant's surrender of firearms. See id. Defendant contends that the lack of a record prevents this Court from reviewing the trial court's finding that defendant made a threat to commit suicide. As noted above, all we can review as to the ex parte DVPO hearing is the plaintiff's verified complaint and attached exhibits, and as to the issuance of the ex parte DVPO generally, defendant cannot show prejudice from the lack of recordation for the reasons noted above. Accordingly, we review whether plaintiff's verified complaint constitutes competent evidence to support the trial court's finding that defendant made a threat to commit suicide.
Defendant argues that plaintiff's allegations of suicide threats were based only upon a July or August 2013 text message, in which defendant states: "I am killing myself. I need you[.]" Plaintiff added a note next to the screenshot to clarify the text message's context and meaning, which states "suicide by alcohol[.]" Plaintiff's note indicates that she is *540 alleging that defendant is committing suicide by alcohol. Defendant sent that text message almost one year before plaintiff filed her complaint in May 2014. While long-term excessive alcohol consumption is certainly unhealthy and potentially fatal, considering the context of the message and the timing nearly one year before plaintiff filed her complaint, we could agree that defendant's text message, standing alone, would not amount to evidence of a threat to commit suicide under N.C. Gen.Stat. § 50B-3.1(a). And although we do not have a transcript of the ex parte DVPO hearing, we note that at the full DVPO hearing, plaintiff explained her concern over defendant's long-term problems with alcoholism and her understanding of the text message in this context. In fact, as discussed in more detail below, the DVPO does not include a finding that defendant had threatened suicide.
But plaintiff's allegations of suicide threats included more than just the text message which could be interpreted in various ways. Plaintiff's complaint alleged that "defendant has made threats to commit suicide in that ... several times [he] has taken a gun and driven off leaving [plaintiff] to believe he's planning to kill himself; more recently he says if [plaintiff] just wait[s] he'll die from alcoholism[.]" Although the complaint did not state specific dates for the "several times" that defendant took a gun and drove off, making plaintiff believe that he was planning suicide, this allegation, coupled with the detailed allegations of defendant's alcoholism, threats, and volatile behavior, would support the trial court's finding that defendant "made threats to commit suicide[.]" Defendant cannot demonstrate prejudice from the lack of a transcript on this issue, so we hold that the trial court properly ordered defendant to surrender all firearms, ammunition, and gun permits. See id.
IV. DVPO
With respect to the DVPO, defendant contends that the trial court erred in (1) finding that defendant placed plaintiff in fear of imminent bodily injury; (2) finding that defendant placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress; (3) concluding that defendant committed an act of domestic violence against plaintiff; and (4) ordering that defendant surrender all firearms, ammunition, and gun permits. Because the trial court may issue the DVPO upon just one of the grounds listed in section 50B-1(a) and we hold that competent evidence supports the trial court's finding that defendant placed plaintiff in fear of continued harassment, we do not address whether competent evidence supports the trial court's finding that defendant placed plaintiff in fear of imminent bodily injury. See id. § 50B-1(a)(2).
*541 *898 A. Fear of Continued Harassment
Defendant argues that competent evidence does not support the trial court's finding of ultimate fact that defendant placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress. N.C. Gen.Stat. § 50B-1(a) defines domestic violence as
the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
(1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
(2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or
(3) Committing any act defined in G.S. 14-27.2 through G.S. 14-27.7.
Id. § 50B-1(a). N.C. Gen.Stat. § 14-277.3A(b)(2) defines "harassment" as "[k]nowing conduct ... directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." Id. § 14-277.3A(b)(2). N.C. Gen.Stat. § 14-277.3A(b)(4) defines "substantial emotional distress" as "[s]ignificant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." Id. § 14-277.3A(b)(4). We apply a subjective test to determine if defendant placed plaintiff in fear of continued harassment and do not assess whether plaintiff's "actual subjective fear is objectively reasonable under the circumstances." See Brandon, 132 N.C.App. at 654-55, 513 S.E.2d at 595 (discussing N.C. Gen.Stat. § 50B-1(a)(2) in the context of fear of imminent serious bodily injury).
The trial court made the following findings of fact regarding the issue of plaintiff's fear of continued harassment:
[Defendant] repeatedly texted [plaintiff] using language that based on the [plaintiff's] prior dealings with the defendant and his statements to her about coming to kill her in the past would cause the plaintiff to be put in fear of imminent serious bodily injury as well as continued *542 harassment. Defendant texted the plaintiff that [plaintiff's] actions have "caused a rage within me that I couldn't imagine. [It is going to] be ugly." Also, "[y]ou always knew I could be a son of a[b-]. You brought it out. I will be the worst son of a [b-] you could imagine. Don't expect anything else." Also, "[t]he wrath will be ... immense. I will spend every dollar I have to get revenge." Also, "I love you but if you don't love me I go into defensive mode." Plaintiff has suffered substantial emotional distress in that she has been afraid to show houses as is required in her real estate work. Plaintiff has emailed defendant asking him to stop threatening her.
The text [messages] all came within 40 days of one another with several being ... within 2 days.
Defendant specifically argues that competent evidence does not support the trial court's determination that defendant's communications tormented, terrorized, or terrified plaintiff. But plaintiff testified that because of defendant's April and May 2014 text messages, she feared that defendant was "coming to kill" her. She also testified that on 26 May 2014, while she was working as a real estate agent, she feared that defendant had hired someone to meet her at a house to kill her. The trial court found her to be credible. We give great deference to the trial court's assessment of a witness's credibility. Id. at 651-52, 513 S.E.2d at 593 ; see also Shipman v. Shipman, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) ("[The trial court has the] opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." (quotation marks omitted)).
Defendant questions the reasonableness of plaintiff's fear. But given the statutory language of N.C. Gen.Stat. § 50B-1(a)(2), we examine only whether plaintiff was actually subjectively afraid and do not examine whether plaintiff's fear was objectively reasonable. See *899 Brandon, 132 N.C.App. at 654-55, 513 S.E.2d at 595. Accordingly, we defer to the trial court's assessment of plaintiff's credibility and hold that competent evidence supports the trial court's determination that defendant's communications tormented, terrorized, or terrified plaintiff.
Defendant next argues that competent evidence does not support the trial court's determination that defendant's communications amounted to harassment. But defendant's text messages were knowing conduct directed at plaintiff, which served no legitimate purpose.
*543 See N.C. Gen.Stat. § 14-277.3A(b)(2). Defendant testified that in his text messages, he meant only that he was going to be aggressive in negotiating their property settlement. But we defer to the trial court's assessment of defendant's credibility and its resulting determination that defendant's text messages served no legitimate purpose. See Brandon, 132 N.C.App. at 651-52, 513 S.E.2d at 593 ; Shipman, 357 N.C. at 474, 586 S.E.2d at 253. Additionally, as discussed above, the trial court found that defendant's communications tormented, terrorized, or terrified plaintiff. Accordingly, we hold that defendant's text messages amounted to harassment. See N.C. Gen.Stat. § 14-277.3A(b)(2).
Defendant further contends that plaintiff neither alleged that defendant's communications caused her substantial emotional distress nor does competent evidence support the trial court's determination that defendant's communications caused her substantial emotional distress. N.C. Gen.Stat. § 14-277.3A(b)(4) defines "substantial emotional distress" as "[s]ignificant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." Id. § 14-277.3A(b)(4). In her complaint, plaintiff alleged that she feared defendant was "coming to kill" her. Additionally, as discussed above, plaintiff testified that she feared for her life, and the trial court found her to be credible and found that her fear was so great that she was afraid to show houses, which was required by her employment. A level of fear so great that a person cannot perform the tasks required by her employment would likely cause "substantial emotional distress." Deferring to the trial court on the issue of credibility, we hold that competent evidence supports the trial court's determination that defendant's text messages inflicted substantial emotional distress on plaintiff. See Brandon, 132 N.C.App. at 651-52, 513 S.E.2d at 593 ; Shipman, 357 N.C. at 474, 586 S.E.2d at 253.
Defendant finally contends that in the DVPO, the trial court erred in failing to include specific findings of fact as to every element of fear of continued harassment, as described in N.C. Gen.Stat. §§ 14-277.3A(b)(2), 50B-1(a)(2). But as discussed above, the trial court need not make specific findings as to every evidentiary fact. See Kennedy, 221 N.C.App. at 224, 726 S.E.2d at 196 ("While the trial court need not set forth the evidence in detail[,] it does need to make findings of ultimate fact which are supported by the evidence; the findings must identify the basis for the 'act of domestic violence.' "). The trial court accomplished this task by making the findings of fact quoted above and by further finding that defendant placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress. See id., 726 S.E.2d at 196 ; N.C. Gen.Stat. § 50B-1(a)(2).
*544 In summary, we hold that competent evidence supports the trial court's finding that defendant placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress. Contrary to defendant's assertion, we further hold that this finding supports the trial court's conclusion of law that defendant committed an act of domestic violence against plaintiff. See N.C. Gen.Stat. § 50B-1(a).
B. Surrender of Firearms
Defendant contends that in the DVPO, the trial court erred in ordering him to surrender all firearms, ammunition, and gun permits. As discussed above, the trial court may order defendant to surrender all firearms if the trial court finds any of the four factors listed in N.C. Gen.Stat. § 50B-3.1(a). This requirement applies to both an ex parte DVPO and a DVPO. See State v. Poole, --- N.C.App. ----, ----, 745 S.E.2d 26, 33 (" Section 50B-3.1 addresses not only orders entered after the ten-day hearing, but also emergency or ex parte orders." (quotation *900 marks omitted)), appeal dismissed and disc. review denied, 367 N.C. 255, 749 S.E.2d 885 (2013). In the DVPO, the trial court failed to check any of the boxes on the form that contained the statutory findings necessary to order the surrender of firearms. See N.C. Gen.Stat. § 50B-3.1(a). Accordingly, we hold that the trial court erred in ordering defendant to surrender all firearms, ammunition, and gun permits and thus vacate that portion of the DVPO. See id. § 50B-3.1(a).
V. Conclusion
For the foregoing reasons, we affirm the ex parte DVPO. We affirm in part the DVPO but vacate the portion in which the trial court ordered defendant to surrender all firearms, ammunition, and gun permits. We also remand this case to the trial court for entry of the appropriate orders consistent with this opinion.[6]
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
Judges BRYANT and HUNTER, JR. concur.

Rule 65(b) specifically allows a temporary restraining order to be granted "only if (i) it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (ii) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required." N.C. Gen.Stat. § 1A-1, Rule 65(b) (2013) (emphasis added).

This happened in Coppley, where the order on appeal included a finding about the unrecorded hearing for entry of the consent order regarding the judge's memory of that hearing, that "[t]he undersigned does not recall the defendant being emotionally distraught or mentally or physically impaired when she appeared before him for entry of the consent order on May 3, 1995." See id. at 666, 496 S.E.2d at 617. But the order also noted that "Judge Honeycutt indicated he had no independent recollection of the parties appearing before him for the entry of the Consent Order and further indicated that should he have the same, he would consider recusal at that time." Id., 496 S.E.2d at 617-18. This Court concluded that "[o]ne who has no independent recollection of the parties appearing before him cannot then make a finding as to the mental or physical condition of one of the parties on that occasion. As this finding of fact is clearly in conflict with the evidence before us on appeal, it fails." Id., 496 S.E.2d at 618.

Below we will separately address the effect of the absence of a record as to one provision of the order, defendant's surrender of firearms.

Defendant does not contend that insufficient evidence supports the trial court's findings of fact in the ex parte DVPO but does contend that insufficient evidence supports the trial court's findings of fact in the DVPO. We address this argument later in our discussion of the DVPO.

We recognize that the trial court's determination that defendant placed plaintiff in fear of continued harassment appears to be closer to a conclusion of law than a finding of fact. But we treat this determination as a finding of ultimate fact in support of the trial court's conclusion of law that defendant committed an act of domestic violence. See id. at 222, 726 S.E.2d at 195 ("[A] conclusion of law that an act of domestic violence has occurred required evidence and findings of the following: ... the act or acts of defendant placed plaintiff ... in fear of ... continued harassment[.]").

We recognize that by the terms of the DVPO, it would have expired on 2 January 2015, but a DVPO is subject to extension under N.C. Gen.Stat. § 50B-3(b) (2013). Depending upon the situation on remand and any relief requested by either party, the trial court may take the appropriate action.