IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-554

No. COA21-579

Filed 16 August 2022

Johnston County, No. 20 CVD 2556

MEGAN KEENAN, Plaintiff,

v.

JASON KEENAN, Defendant.

Appeal by Defendant from order entered 7 May 2021 by Judge Resson Faircloth in Johnston County District Court. Heard in the Court of Appeals 22 March 2022.

*Walker Kiger, PLLC, by David "Steven" Walker, for plaintiff-appellee.*

*The Law Office of Robert L. Schupp, PLLC, by Robert L. Schupp, for defendant-appellant.*

MURPHY, Judge.

In accordance with N.C.G.S. § 50B-3, "[i]f [a] court . . . finds that an act of domestic violence has occurred, the court shall grant a protective order restraining the defendant from further acts of domestic violence." N.C.G.S. § 50B-3(a) (2021). "Domestic violence," for purposes of N.C.G.S. § 50B-3, includes "[p]lacing the [party seeking a domestic violence protective order] or a member of [his or her] family or household in fear of imminent serious bodily injury or continued harassment, as defined in [N.C.G.S. §] 14-277.3A, that rises to such a level as to inflict substantial

emotional distress[.]" N.C.G.S. § 50B-1(a)(2) (2021). Placing a person in fear of continued harassment does not require multiple acts by a defendant. Here, where Defendant challenges a domestic violence protective order ("DVPO") entered against him by specifically arguing the trial court was required to find he committed two or more acts as the basis for the alleged error, the trial court did not err, as a single act was sufficient for it to grant Plaintiff a domestic violence protective order.

¶ 2        However, a defendant's act does not constitute "continued harassment" if it served a legitimate purpose. Whether an act served a legitimate purpose is a determination reserved for the finder of fact; thus, when reviewing the trial court's determination on the issue of legitimate purpose, we uphold its determination as long as "there was competent evidence to support the trial court's findings of fact." *Stancill v. Stancill*, 241 N.C. App. 529, 531, 773 S.E.2d 890, 892 (2015). In this case, there was competent evidence that the only purpose of Defendant's conduct was to harass Plaintiff; and, as such, the trial court did not err in determining Defendant's act did not serve a legitimate purpose.

¶ 3        In challenging the admissibility of allegedly improper character evidence under Rule 404(b), a defendant must show the admission of that evidence created probable prejudice in the factfinder's determination at trial. Here, where Defendant makes no attempt to show he was prejudiced by an alleged evidentiary error, that issue is deemed abandoned in accordance with Rule 28(b)(6) of our Rules of Appellate

Procedure.

¶ 4     In determining whether to issue a DVPO, the trial court's consideration of a prior DVPO entered against the defendant is permissible as long as it otherwise constitutes relevant evidence under Rule 401 and is considered alongside at least one current, specific act. Here, where the trial court considered a prior DVPO alongside evidence of a specific act by Defendant and the prior DVPO was relevant to contextualize Plaintiff's emotional response to his current act, the trial court did not err in considering the prior DVPO.

## **BACKGROUND**

¶ 5     This appeal arises out of a *Complaint and Motion for Domestic Violence Protective Order* filed by Plaintiff on 18 August 2020 alleging Defendant, her ex-husband, came to her house "to cut [her] grass" on 17 August 2020 after she repeatedly told him he did not have permission to do so and he refused to leave after Plaintiff asked him to leave several times. Plaintiff indicated she was "very afraid" of Defendant, as he had a history of physically, emotionally, and verbally abusing her, was "showing [a] progression of unstable behavior[,]" and sent her text messages, including sexual ones, despite being asked to stop.

¶ 6     The trial court issued a temporary *ex parte* DVPO on 18 August 2020, adopting by reference the facts as alleged in Plaintiff's complaint. Then, after several continuances, the trial court held a hearing on 7 May 2021 to determine whether a

permanent DVPO was warranted. Plaintiff testified about the 17 August 2020 incident and also introduced text messages between her and Defendant from 16 August 2020 and 17 August 2020. The testimony and text messages demonstrated that Defendant came to Plaintiff's house, began cutting her grass, and refused to leave on 17 August 2020, despite at least three requests by Plaintiff on 16 August 2020 that he not come and four requests on 17 August 2020 that he leave. Plaintiff testified she did not need or allow Defendant to come and cut her grass because she had arranged for Defendant's brother to do so, which she communicated to Defendant. She also testified that Defendant's presence on 17 August 2020 made her "nervous" and gave her a "panic attack." Finally, in addition to testifying about the August 2020 incident, Plaintiff introduced a prior consent DVPO against Defendant issued for her protection on 14 October 2016, which expired in September 2019 after two extensions, and text messages from Defendant during April 2020, including unsolicited sexual messages, which corroborated the allegations in her complaint. At the close of Plaintiff's evidence, Defendant moved to dismiss, and the trial court denied his motion.

¶ 7        Defendant, for his part, did not contradict Plaintiff's account of the August 2020 incident at the hearing; rather, he testified and presented evidence that Plaintiff's lawn was overgrown and that he ignored Plaintiff's requests and cut the grass "to protect [his] kids and their best interests and their health and well-being."

Regarding the April 2020 text messages, Defendant acknowledged that he understood "[Plaintiff] doesn't want [him] sending those type[s] [of] messages to her" and testified he had stopped doing so. Plaintiff cross-examined Defendant about another prior DVPO against him, one issued for his sister's protection. Plaintiff did not introduce this DVPO into evidence, but she showed Defendant a copy and questioned him about it. Defendant objected to these questions, first on relevancy grounds and then on the grounds that the DVPO constituted impermissible character evidence. *See generally* N.C.G.S. § 8C-1, Rule 401 (2021); N.C.G.S. § 8C-1, Rule 403 (2021); N.C.G.S. § 8C-1, Rule 404 (2021). The trial court, however, overruled both objections. At the close of all evidence, Defendant renewed his motion to dismiss for insufficiency of the evidence, but the trial court, again, denied his motion.

¶ 8 At the close of the hearing, the trial court granted Plaintiff a permanent DVPO; and, on 18 May 2021, Defendant appealed.

## ANALYSIS

¶ 9 On appeal, Defendant argues that "the trial court erred in denying Defendant's motion[s] to dismiss for insufficiency of the evidence"; that "the trial court erred in granting Plaintiff's petition for a domestic violence protective order"; and that "the trial court erred in admitting . . . prior domestic violence protective order[s] entered against Defendant . . . ." However, as Defendant's arguments with respect to both his motions to dismiss and the granting of the DVPO revolve entirely around two

blanket arguments about the interpretation of N.C.G.S. § 50B-1—namely, that a DVPO "requires two or more acts in order for a defendant to have engaged in [domestic violence]" and that "Defendant's acts served a legitimate purpose"—we review these underlying arguments in order to resolve both the motion to dismiss and DVPO arguments simultaneously, then proceed to consider the character evidence issue. Neither blanket argument by Defendant is meritorious, and the trial court did not err in considering evidence of Defendant's prior DVPOs. We affirm.

## A. Multiple Acts Not Required for Chapter 50B

"We review issues of statutory construction *de novo*." *In re Ivey*, 257 N.C. App. 622, 627, 810 S.E.2d 740, 744 (2018). Under N.C.G.S. § 50B-3, "[i]f [a] court . . . finds that an act of domestic violence has occurred, the court shall grant a protective order restraining the defendant from further acts of domestic violence." N.C.G.S. § 50B-3(a) (2021). For purposes of issuing a DVPO,

> [d]omestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
>
> (1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
>
> (2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined

in [N.C.G.S. §] 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or

(3) Committing any act defined in [N.C.G.S. §] 14-27.21 through [N.C.G.S. §] 14-27.33.

N.C.G.S. § 50B-1(a) (2021). Specifically at issue in this case is whether Defendant "[placed] the aggrieved party . . . in fear of imminent serious bodily injury or continued harassment, as defined in [N.C.G.S. §] 14-277.3A, that rises to such a level as to inflict substantial emotional distress[,]" as this was the primary basis for the DVPO. *Id.*

Defendant argues that the phrasing "fear of imminent serious bodily injury or continued harassment, as defined in [N.C.G.S. §] 14-277.3A" incorporates not only N.C.G.S. § 14-277.3A(b)(2)'s definition of "harassment," but also N.C.G.S. § 14-277.3A(b)(1)'s definition of "[c]ourse of conduct." *See generally* N.C.G.S. § 14-277.3A(b) (2021). Under this argument, "harassment," for purposes of N.C.G.S. § 50B-1, would require a "[c]ourse of conduct," which is defined as

> [t]wo or more acts, including, but not limited to, acts in which the [defendant] directly, indirectly, or through third parties, by any action, method, device, or means, is in the presence of, or follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

N.C.G.S. § 14-277.3A(b)(1) (2021). This definitional requirement, Defendant suggests, would accompany the definition of "harassment" in N.C.G.S. § 14-277.3A(b)(2), which describes the covered acts as

> [k]nowing conduct, including written or printed communication or transmission, telephone, cellular, or other wireless telephonic communication, facsimile transmission, pager messages or transmissions, answering machine or voice mail messages or transmissions, and electronic mail messages or other computerized or electronic transmissions directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose.

N.C.G.S. § 14-277.3A(b)(2) (2021).

¶ 12    However, we are not persuaded that N.C.G.S. § 50B-1(a) contemplates only the behaviors falling at the intersection of these two descriptions; rather, in accordance with the plain language of the statute, the definition N.C.G.S. § 50B-1 imports from N.C.G.S. § 14-277.3A is that of "harassment," exclusive of any further definitions discussed in N.C.G.S. § 14-277.3A. *See* N.C.G.S. § 50B-1(a)(2) (2021) (emphasis added) (referring to "*harassment,* as defined in [N.C.G.S. §] 14-277.3A"). Generally speaking, N.C.G.S. § 14-277.3A is not a harassment statute, but a stalking statute; its subsections, including those defining harassment, do so to elaborate on the definition of "stalking." *See generally* N.C.G.S. § 14-277.3A (2021). In other words, "harassment, as defined in [N.C.G.S. §] 14-277.3A[,]" does not refer to the *whole* statute, as a reference to stalking would, but instead refers to an individual subpart dedicated to "harassment" within a broader, section-wide definition of "stalking." N.C.G.S. § 50B-1(a)(2) (2021). Thus, the statutory definition incorporated is limited to that of "harassment" in N.C.G.S. § 14-277.3A(b)(2). This interpretation finds

ample support in our caselaw. *See, e.g., Kennedy v. Morgan*, 221 N.C. App. 219, 222, 726 S.E.2d 193, 195 (2012) (quoting N.C.G.S. § 14-277.3A(b)(2) (2011)) ("Chapter 50B does not define 'harassment,' but [N.C.G.S.] § 50B-1(a)(2) refers to [N.C.G.S.] § 14-277.3A which defines 'harassment' as 'knowing conduct directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose.'"); *Martin v. Martin*, 266 N.C. App. 296, 307, 832 S.E.2d 191, 200 (2019) (referring to N.C.G.S. § 14-277.3A's definition of "harassment" while ignoring its definition of "course of conduct" and the overall definition of "stalking"); *Bunting v. Bunting*, 266 N.C. App. 243, 250, 832 S.E.2d 183, 188 (2019) (same); *Thomas v. Williams*, 242 N.C. App. 236, 243-44, 773 S.E.2d 900, 905 (2015) (same); *Stancill*, 241 N.C. App. at 541, 773 S.E.2d at 898 (same).

¶ 13    As N.C.G.S. § 50B-1(a)(2) imports only the definition of "harassment" from N.C.G.S. § 14-277.3A and not "[c]ourse of conduct," more than one act is not required for a trial court to find domestic violence has occurred and issue a DVPO. Instead,

> a conclusion of law that an act of domestic violence has occurred require[s] evidence and findings of the following: (1) [the] [d]efendant "has or has had a personal relationship," as defined by [N.C.G.S. §] 50B-1(b), with [the] plaintiff; (2) [the] defendant committed *one or more acts* upon [the] plaintiff or "a minor child residing with or in the custody of" [the] plaintiff; (3) the *act or acts* of [the] defendant placed [the] plaintiff "or a member of her family or household in fear of imminent serious bodily injury *or* continued harassment, as defined in [N.C.G.S. §] 14-

277.3A;" and (4) the fear "rises to such a level as to inflict substantial emotional distress."

*Kennedy*, 221 N.C. App. at 222, 726 S.E.2d at 195 (emphases added) (footnote omitted) (quoting N.C.G.S. § 50B-1(a)(2) (2011)). The trial court, therefore, did not err in using only one act by Defendant as the basis for its DVPO.

## B. Legitimate Purpose of Defendant's Act

¶ 14    Defendant further argues that the act supporting the DVPO—mowing Plaintiff's grass against her repeated requests, both on the day of his appearance and the day before, that he not come—served a legitimate purpose and, therefore, could not serve as the basis for a DVPO. The act in question, Defendant argues, could not have "[placed] the aggrieved party . . . in fear of imminent serious bodily injury or continued harassment," N.C.G.S. § 50B-1(a)(2) (2021), because acts that serve a legitimate purpose cannot amount to harassment under N.C.G.S. § 14-277.3A(b)(2).

¶ 15    Despite the language of N.C.G.S. § 50B-1 only indicating that a defendant's act or acts may support a DVPO if they "placed the aggrieved party . . . *in fear of . . . continued* harassment," N.C.G.S. § 50B-1(a)(2) (2021) (emphasis added), we have consistently required the act itself to constitute harassment for the DVPO to issue on that basis. *See, e.g., Bunting*, 266 N.C. App. at 250-51, 832 S.E.2d at 198-89 (examining whether a defendant's acts supporting a DVPO qualified as harassment). Thus, "to support a conclusion of law that an act of domestic violence has occurred

due to 'harassment,' . . . [the] defendant's acts [must] (1) [be] knowing, (2) [be] 'directed at a specific person,' . . . (3) torment[], terrorize[], or terrif[y] the person, . . . and (4) serve[] no legitimate purpose.*" Kennedy*, 221 N.C. App. at 222, 726 S.E.2d at 195-96 (quoting N.C.G.S. § 14-277.3A(b)(2) (2011)).  However, when conducting this inquiry, "we defer to the trial court's assessment of [the parties'] credibility and its resulting determination [of whether the conduct served a] legitimate purpose" rather than heeding a defendant's own characterization of the conduct. *Stancill*, 241 N.C. App. at 543, 773 S.E.2d at 899.  Contrary to Defendant's suggestion, "[w]hether conduct served a legitimate purpose is a factual inquiry," not a legal question subject to de novo review on appeal. *Bunting*, 266 N.C. App. at 250, 832 S.E.2d at 188.

¶ 16 "We review both an *ex parte* DVPO and a DVPO to determine whether there was competent evidence to support the trial court's findings of fact[.]" *Stancill*, 241 N.C. App. at 531, 773 S.E.2d at 892 (mark omitted).  Here, the trial court was presented with evidence that Defendant, after being warned not to mow Plaintiff's lawn the day before and being told to leave day-of, trespassing on Plaintiff's property and mowing her lawn.  These events provide an adequate basis for a finder of fact—here, the trial court—to conclude Defendant's actions were taken to "torment[], terrorize[], or terrif[y]" Plaintiff rather than for a "legitimate purpose."  N.C.G.S. § 14-277.3A(b)(2) (2021).  Whatever persuasive value Defendant's characterization of the events may have—that his actions served the legitimate purpose of mowing

Plaintiff's lawn and were directed at Plaintiff's lawn rather than Plaintiff—they do not establish that his actions were somehow legitimate as a matter of law or negate competing interpretations of his conduct. Indeed, the ability to torment a person while ostensibly targeting a nearby object makes conduct of this type especially appealing to a passive-aggressive harasser, producing the intended effect while maintaining deniability. This very phenomenon underscores the importance of the factfinder's credibility determination. Here, where the finder of fact determined that Defendant's conduct did not serve a legitimate purpose, we will not undermine that determination by speculating over a cold Record. *See Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980) ("The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal.").

¶ 17        As the trial court was not required to find Defendant committed multiple acts and properly found as a matter of fact that Defendant's conduct did not serve a legitimate purpose, the trial court neither erred in denying Defendant's motion to dismiss nor in granting Plaintiff's DVPO.

### C. Prior DVPO Concerning Defendant's Sister

¶ 18        Defendant further argues the trial court erred when it considered prior DVPOs issued against him concerning his sister. Defendant argues the order should not have

been admitted at trial because it constituted inadmissible character evidence under Rule 404(b) of our Rules of Evidence. *See* N.C.G.S. § 8C-1, Rule 404(b) (2021) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident."). As Defendant properly objected at trial, ordinarily, we would "review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

¶ 19 However, "evidentiary errors are considered harmless unless a different result would have been reached at trial. The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." *Keller v. Deerfield Episcopal Ret. Cmty., Inc.*, 271 N.C. App. 618, 635, 845 S.E.2d 156, 167, *disc. rev. denied*, 376 N.C. 544, 851 S.E.2d 372 (2020). Defendant makes no argument that he was prejudiced by the trial court's consideration of the prior DVPO concerning his sister.[1] Without such an argument, Defendant cannot show the trial court erred in entering the current DVPO.

¶ 20 We have previously held that, when an issue raised by an appellant "is missing

---

[1] Indeed, the argument appears to quite literally be incomplete, with the final sentence ending in the middle of a subordinate clause.

necessary reasons or arguments" without which he cannot prevail on appeal, that issue is deemed abandoned. *State v. Patterson*, 269 N.C. App. 640, 645, 839 S.E.2d 68, 72, *disc. rev. denied*, 375 N.C. 491, 847 S.E.2d 886 (2020); *see also* N.C. R. App. P. 28(b)(6) (2022) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Here, where Defendant was required to show prejudice and did not attempt to do so, he has abandoned his Rule 404(b) argument on appeal.

## D. Prior DVPO Concerning Plaintiff

Finally, Defendant argues the trial court erred in considering, over a relevancy objection at trial, a prior DVPO entered against him concerning Plaintiff. Defendant argues consideration of this prior DVPO was improper because, under *Kennedy*, "a general history of abuse is not an act of domestic violence." "We review relevancy determinations by the trial court de novo . . . ." *State v. Triplett*, 368 N.C. 172, 175, 775 S.E.2d 805, 807 (2015); *see also* N.C.G.S. § 8C-1, Rule 401 (2021) ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Defendant's contention appears to be that, under *Kennedy*, the trial court's reliance, in any part, on the prior DVPO concerning Plaintiff constitutes reversible error. However, *Kennedy* is inapposite with respect to relevancy. Our remark in

*Kennedy* that "a vague finding of a general history of abuse is not a finding of an act of domestic violence" was made in the context of a challenge to the sufficiency of the evidence at trial, not a challenge to the admissibility of the evidence. *Kennedy*, 221 N.C. App. at 223, 726 S.E.2d at 196 (marks omitted). This distinction is evident from *Kennedy*'s express contemplation that a trial court *may* consider a prior DVPO as long as it is not the sole consideration leading to the entry of the current DVPO. *See id.* (marks omitted) ("[W]e appreciate that a history of abuse may at times be quite relevant to the trial court's determination as to whether a recent act constitutes domestic violence[.]").

¶ 23   Reviewing the trial court's admission of the prior DVPO concerning Plaintiff, then, we have no difficulty determining that the trial court did not err. The prior DVPO, at minimum, would demonstrate to the finder of fact whether Plaintiff was placed "in fear of imminent serious bodily injury or continued harassment[] . . . that rises to such a level as to inflict substantial emotional distress" by contextualizing Plaintiff's emotional response to Defendant trespassing on her property. N.C.G.S. § 50B-1(a)(2) (2021). Moreover, a detailed sense of the relationship dynamic between Plaintiff and Defendant would assist the finder of fact in determining Defendant's state of mind when evaluating whether Defendant's actions served a legitimate purpose. As such, the trial court did not err in admitting the prior DVPO concerning Plaintiff.

## **CONCLUSION**

Defendant's blanket arguments that the trial court was required to find he engaged in a course of conduct and that his acts served a legitimate purpose as a matter of law are both without legal support. Moreover, Defendant has not argued he was prejudiced by the trial court's consideration of allegedly inadmissible evidence, and the trial court did not otherwise err in considering prior DVPOs issued against him.

AFFIRMED IN PART; DISMISSED IN PART.

Judges INMAN and GRIFFIN concur.