ELMORE, Judge.
*445 Respondent-father ("Father") and respondent-mother ("Mother") appeal from an adjudication order which adjudicated their children C.T. ("Clara")[1] and A.L.T. ("Anna") neglected juveniles, and a disposition order which continued custody of the children with the Caldwell County Department of Social Services ("CCDSS").
Father and Mother (collectively "parents") are the parents of Clara, born in June 2009, and Anna, born in April 2012. On 9 October 2013, CCDSS filed juvenile petitions alleging Clara was an abused and neglected juvenile and Anna was a neglected juvenile. CCDSS alleged that Clara disclosed to her paternal great aunt E.D. ("Aunt D") and CCDSS social worker Aimee Fairchild ("Fairchild") that she was being sexually abused by Father; that Clara disclosed to Fairchild that she had been "punched" by Father; that Father admitted backhanding Clara; and that Mother disclosed to relatives that domestic violence occurred between her and Father. The petitions further alleged that CCDSS records revealed that Father was a victim of sexual abuse by his own admission; that Father was substantiated as a perpetrator of sexual abuse upon his female cousin in 2003, when she was between 9 to 12 years of age and Father was between 12 and 15 years of age; and that there was no record that Father complied with CCDSS's recommendation that he participate in a sexual abuse intervention service ("SAIS") assessment. CCDSS took non-secure custody of the children.
Prior to the hearing on the petitions, the District Court ("the court" or "the trial court") allowed CCDSS's motion that Clara be allowed to testify by remote video equipment. CCDSS also filed a notice of intent to use hearsay statements Clara made to Aunt D and Fairchild. The court denied the motion, finding that the "best evidence is the juvenile's live testimony[.]"
The adjudication hearing was held on 26 February 2014, 26 March 2014, and 22 April 2014. Clara testified that her father hit her in the mouth, but denied that he touched her inappropriately. Over the parents' objections, Aunt D and Fairchild testified about statements Clara made to them regarding inappropriate touching by Father. The court also allowed, over the parents' objections, Father's cousin to testify about her sexual encounter with Father when they were children and former CCDSS investigator Shelley *318 Triplett to testify about the 2003 investigation of events involving the Father's illicit sexual acts. At the end of the *446 adjudication hearing, the parents renewed their objections to certain testimony and moved to dismiss the petitions. The court dismissed the abuse allegation.
By order filed 21 May 2014, the court adjudicated Clara and Anna neglected juveniles. In a separate disposition order, the court determined it was in the best interest of Clara and Anna to remain in CCDSS custody. The court ordered Father to comply with his case plan, which included completing a SAIS assessment, and denied visitation. The court ordered Mother to comply with her case plan and permitted visitation every other week. Parents appeal separately.
Both parents contend: (1) the trial court erred in allowing hearsay statements into evidence; (2) the trial court erred in allowing irrelevant testimony into evidence; (3) certain findings of fact are not supported by clear, cogent, and convincing evidence; and (4) the trial court failed to make sufficient findings of fact to support its determination that the children were neglected.
I. Standard of Review
When reviewing an adjudication of neglect, we must determine whether the trial court's findings of fact are supported by clear and convincing evidence, and whether those findings of fact support the trial court's conclusions of law. In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000). If the trial court's findings of fact are supported by competent evidence, they are binding on appeal, even if there may be evidence to support contrary findings. In re T.H.T., 185 N.C.App. 337, 343, 648 S.E.2d 519, 523 (2007), aff'd as modified, 362 N.C. 446, 665 S.E.2d 54 (2008). We review the trial court's conclusions of law de novo. In re J.S.L., 177 N.C.App. 151, 154, 628 S.E.2d 387, 389 (2006).
II. Challenges to Testimony
The parents argue that the trial court erred in allowing into evidence hearsay statements made by Clara to social worker Fairchild and to Aunt D. Before the hearing, the trial court denied CCDSS's motion to use Clara's hearsay statements regarding Father's inappropriate touching of Clara. At the hearing, Clara denied any such conduct and, over the parents' objections, the court allowed Aunt D and Fairchild to testify about Clara's statements about the alleged conduct.
"Where the juvenile is alleged to be abused, neglected, or dependent, the rules of evidence in civil cases shall apply" to the adjudication hearing. N.C. Gen.Stat. § 7B-804 (2013). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, *447 offered in evidence to prove the truth of the matter asserted." N.C. Gen.Stat. § 8C-1, Rule 801(c) (2013). This Court has acknowledged the " well-established supposition that the trial court in a bench trial is presumed to have disregarded any incompetent evidence." In re J.B., 172 N.C.App. 1, 16, 616 S.E.2d 264, 273 (2005) (quotation and citation marks omitted). After the trial court determines a juvenile is neglected, it "may consider any evidence, including hearsay evidence ... that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen.Stat. § 7B-901 (2013).
Here, the court can be presumed to have disregarded the incompetent evidence because the court made no findings pertaining to the hearsay evidence in support of its adjudication of neglect and dismissed the sexual abuse allegation. The parents argue the trial court's reliance on the hearsay evidence is shown by the court's establishing a disposition that orders Father to obtain an SAIS and denies him visitation. However, the trial court was authorized to consider the hearsay evidence in its dispositional order. Id. Accordingly, this argument is without merit.
Parents also argue testimony from Father's first cousin and from a former CCDSS social worker regarding Father's prior sexual conduct should have been excluded as irrelevant.
*319 We have stated the following regarding the relevancy of evidence:
Pursuant to the North Carolina Rules of Evidence, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. While a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard, such rulings are given great deference on appeal.
In re E.P., 183 N.C.App. 301, 303-04, 645 S.E.2d 772, 773-74, aff'd per curiam, 362 N.C. 82, 653 S.E.2d 143 (2007) (citation and quotation marks omitted).
Parents contend the trial court erred in admitting evidence of prior sexual activity between Father and his cousin because the sole purpose was to show propensity. However, parents only link the alleged incompetent evidence to the trial court's findings of fact in its disposition order. As noted above, the trial court "may consider any evidence ... necessary to determine the needs of [Clara and Anna] and the most appropriate disposition." See N.C. Gen.Stat. § 7B-901. Because the trial *448 court was authorized to consider such evidence for purposes of disposition, this argument is without merit.
III. Adjudication of Neglect
A. Challenges to Findings of Fact
Parents contend that certain findings of fact made by the trial court are not supported by competent evidence. We disagree.
The trial court made the following pertinent findings of fact[2] to support its conclusion that the children were neglected:
26. Respondent father has engaged in at least one act of domestic violence toward the juvenile, [Clara]. The juvenile, [Clara], has been physically struck by Respondent father on at least one occasion wherein Respondent father popped [Clara] in the mouth leaving a mark on the juvenile's mouth which included a swollen and busted lip.
27. Respondent father has engaged in at least one act of domestic violence toward the juvenile, [Anna]. The juvenile, [Anna], has been physically struck by Respondent father on at least one occasion. The juvenile, [Clara], witnessed Respondent father strike [Anna].
28. The juvenile, [Clara], is fearful or scared that she will receive a whipping or spanking from Respondent father if she states anything that has happened while she resided with Respondent mother and Respondent father.
....
30. Respondent father has engaged in aggressive and violent behaviors in the home where the juveniles resided with him and Respondent mother. Respondent father engages in activities such as punching holes in walls and doors of his home, and throwing and breaking more than one cellular telephone when he is angry. On one occasion, Respondent father broke his hand from punching a wall in the family home. Respondent father has stated that when he gets angry or mad, he just has to hit something. These *449 activities have occurred in the home where Respondent father resides with Respondent mother and the juveniles prior to the juveniles being removed from the family home on October 8, 2013.
As an initial matter, we note that the parents challenge many of the trial court's other findings of fact as not being supported by competent evidence. However, we do not address all of these challenged findings of fact because they are unnecessary to support the ultimate conclusions, and any error in them would not constitute reversible error. See In re T.M., 180 N.C.App. 539, 547, 638 S.E.2d 236, 240 (2006) ("[W]e agree that some of [the challenged findings] are not supported by evidence in the record. When, however, ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute *320 reversible error."). Finding of fact 28 is not challenged by either parent and is deemed supported by competent evidence. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Parents challenge the first sentence of finding of fact 26, arguing that the court mischaracterized Father's single act of discipline as domestic violence. The rest of the finding is unchallenged and supported by the testimony of Clara and her parents. Clara testified that "[Father] popped me in the mouth" and that "he bust me in the lip." Mother testified that Clara was "pitch[ing] a fit" about wanting a toy pictured on a cereal box, that Father tried to explain they could not get the toy, and that when Clara yelled at Mother, Father "popped like this with the back of his hand on her lip and it busted her lip." Father testified that Clara "started getting even more belligerent with her mother and I loosely popped her with my fingertips."
Noting that the term "domestic violence" is not defined in Chapter 7B of the North Carolina General Statutes, parents assert that Father's actions do not fit the definition of domestic violence in N.C. Gen.Stat. § 50B-1(a). That statute defines domestic violence as
one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship ...:
(1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
(2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent *450 serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or
(3) Committing any act defined in G.S. 14-27.2 through G.S. 14-27.7.
N.C. Gen.Stat. § 50B-1(a) (2013). Here, Father intentionally caused bodily injury to a minor child with whom he resides pursuant to section (a)(1) when he struck Anna and hit Clara in the mouth, causing her to suffer a busted lip. Accordingly, the trial court properly characterized Father's actions as domestic violence.
Mother also challenges finding of fact 27 as being unsupported by competent evidence. However, Clara testified, "[Father] popped [Anna] in the mouth" and that Anna cried as a result.
The parents next argue that finding of fact 30 implies that Father's behaviors were untreated and continued up until the time the children were removed from the home. Mother testified that she has seen Father "hit walls" and "bust[ ] a couple [of] cell phones" when he is angry since they were married in August 2009 and that the children were residing in the home when Father had engaged in these acts. Mother further testified that Father "takes [Effexor ] for his anger issues" and has not broken anything since he has been on medication for the past year. When Father was asked what kind of activities he engaged in when he gets mad, Father replied, "punching some holes in some walls and I've destroyed cell phones." He further testified that he has been taking medication for his anger issues for more than a year and has "been fine ever since." Further, Aunt D testified that Father broke his hand after he hit a wall and that Father told her that when he gets mad, he has to hit something. Testimony shows that Father punched walls and broke cell phones while the children resided with the parents and that Father had not done so in the year prior to the hearing in April 2014. We do not find this evidence inconsistent with the trial court's finding that Father's actions occurred "prior to the juveniles being removed from the family home on October 8, 2013." Accordingly, parents' arguments are without merit.
B. Challenges to Conclusion of Neglect
Finally, the parents contend the trial court erred in concluding that the children were neglected juveniles. We disagree.
"The purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be *321 adjudicated as having the status of abused, neglected or dependent." *451 In re J.S., 182 N.C.App. 79, 86, 641 S.E.2d 395, 399 (2007). As such, our Supreme Court has ruled that "[i]n determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." Matter of Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). Thus, our analysis upon review of this matter "is whether the court made the proper determination in making findings and conclusions as to the status of the juvenile." in rE J.S., 182 N.C.app. at 86, 641 S.E.2d at 399.
A "neglected juvenile" is defined in part as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent ... or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen.Stat. § 7B-101(15) (2013). An adjudication of neglect requires "there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotation marks omitted). " Section 7B-101(15) affords the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." In re C.M., 183 N.C.App. 207, 210, 644 S.E.2d 588, 592 (2007) (internal quotation marks omitted).
Here, competent evidence supports the trial court's findings that: Clara and Anna resided in a home where Father had punched holes in walls when he was angry, Father engages in aggressive and violent behaviors in the home, Father "popped" Clara in the mouth causing a "busted lip[,]" Clara is scared of Father, Anna has been physically struck by Father on at least one occasion, Clara witnessed Father strike Anna, and Anna cried as a result of being struck. These findings show that Clara and Anna lived in an environment injurious to their welfare and that they were at a substantial risk of physical, mental, or emotional impairment. See N.C. Gen.Stat. § 7B-101(15). Thus, we hold the trial court properly concluded the children were neglected juveniles. Because we rule the trial court's findings of fact support its legal conclusions that the juveniles were neglected, the lack of findings in the adjudication order regarding Mother's fault or culpability in contributing to the adjudication of neglect is immaterial. See Matter of Montgomery, 311 N.C. at 109, 316 S.E.2d at 252.
IV. Disposition Order
Mother also argues that the disposition order must be vacated. Mother specifically avers that because the trial court's findings of fact *452 do not support its legal conclusions that the juveniles were neglected, the adjudication order is erroneous, and thus, the ensuing disposition order is necessarily erroneous.
Because we have already ruled that the trial court's adjudication order was not in error, Mother's argument necessarily fails. Additionally:
(a) An order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order:
(1) Shall contain a finding that the juvenile's continuation in or return to the juvenile's own home would be contrary to the juvenile's best interest;
(2) Shall contain specific findings as to whether a county department of social services has made reasonable efforts to either prevent the need for placement or eliminate the need for placement of the juvenile, unless the court has previously determined under subsection (b) of this section that such efforts are not required or shall cease;
(3) Shall contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined or determines under subsection (b) of this section that such efforts are not required or shall cease;
*322 (4) Shall specify that the juvenile's placement and care are the responsibility of the county department of social services and that the department is to provide or arrange for the foster care or other placement of the juvenile. After considering the department's recommendations, the court may order a specific placement the court finds to be in the juvenile's best interest[.]
N.C. Gen.Stat. § 7B-507 (2013).
In the case at bar, the trial court made uncontested findings that: the return of the juveniles to the parents' home would be contrary to the juveniles' welfare and best interest because the issues that led to CCDSS involvement still exist and the juveniles require more adequate care than *453 parents can currently provide; CCDSS made reasonable efforts to prevent or eliminate the need for the juveniles' placement; CCDSS should continue to make reasonable efforts to prevent or eliminate the need for the juveniles' placement; the juveniles' placement and care are the responsibility of CCDSS; and CCDSS is to provide or arrange for the foster care or other placement of the juveniles. Accordingly, we affirm the trial court's disposition order. See In re A.S., 181 N.C.App. 706, 711, 640 S.E.2d 817, 820 (2007) aff'd, 361 N.C. 686, 651 S.E.2d 883 (2007).
AFFIRMED.
Judge INMAN concurs by separate opinion.
Judge TYSON dissents by separate opinion.

The pseudonyms "Anna" and "Clara" are used throughout the remainder of this opinion for ease of reading and to protect the juveniles' privacy.

These findings are also set out in the trial court's disposition order as findings numbered 16, 18 and 20.