IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-791

No. COA22-523

Filed 6 December 2022

Carteret County, No. 21 CVD 1040

SHERIKA ROLLINGS, Plaintiff,

v.

RYAN SHELTON, Defendant.

Appeal by plaintiff from order entered 14 December 2021 by Judge Andrew Kent Wigmore in District Court, Carteret County. Heard in the Court of Appeals 1 November 2022.

> *Legal Aid of North Carolina, Inc., by Cynthia Sanders, Sandy L. Lee, TeAndra H. Miller, James Battle Morgan, Jr., and Celia Pistolis, for plaintiff-appellant.*
>
> *No brief filed for defendant-appellee.*

STROUD, Chief Judge.

Plaintiff Sherika Rollings appeals from an order granting Defendant Ryan Shelton's motion to dismiss Plaintiff's "Complaint and Motion for Domestic Violence Protective Order" under Rule of Civil Procedure 12(b)(6). (Capitalization altered.) Because Plaintiff adequately pled all the required elements for a complaint seeking a Domestic Violence Protective Order ("DVPO"), the trial court erred by dismissing her complaint based upon failure to state a claim. We therefore reverse the trial

court's dismissal and remand for further proceedings.

## I. Background

On 13 October 2021, Plaintiff filed a "Complaint and Motion for Domestic Violence Protective Order" against Defendant using form AOC-CV-303. (Capitalization altered.) Plaintiff alleged on 8 October 2021 Defendant "choked [her] after an argument." Plaintiff further alleged Defendant was a "threat" to her because it was not the first time he hit her. Plaintiff then alleged on 12 October 2021 Defendant had keyed her car by carving "[B—]" into it so "[a]t this point" she was "starting to get scared of what he might do to" her. Finally, Plaintiff alleged Defendant had a gun and a concealed carry permit and, while drunk, had "threatened [her] with his gun saying he will kill himself if [she] left him." Because Defendant had a gun, Plaintiff alleged she "need[ed] to be careful" and was "afraid for [her] life." As a result, Plaintiff stated she "would like a protective order against [Defendant] so he can stay away from me." Plaintiff also checked boxes on the form indicating: she believed "there is danger of serious and immediate injury" to her; Defendant had firearms; Defendant had threatened her with a deadly weapon (the gun); and Defendant had threatened to commit suicide.

Based on those allegations, Plaintiff requested the trial court initially enter an *ex parte* order. Plaintiff also requested an order barring Defendant from her residence, place of employment, and school, and from her "child(ren)['s]" day care and

school. Finally, Plaintiff asked the order include a no contact provision and a provision requiring Defendant to "attend an abuser treatment program."

¶ 4 On the same day Plaintiff filed her Complaint, the trial court granted an "*ex parte* Domestic Violence Order of Protection" based on a finding Defendant had "intentionally caused bodily injury" to Plaintiff on 8 October 2021 as indicated in Plaintiff's Complaint.[1] The *ex parte* DVPO was effective until 19 October 2021 and a hearing was set for that day. But on 19 October, upon Defendant's request, the trial court entered an "Order Continuing Domestic Violence Hearing and Ex Parte Order" to allow Defendant time to hire an attorney. (Capitalization altered.) On 2 November 2021, the trial court entered another order continuing the hearing and *ex parte* DVPO for the same reason.

¶ 5 On 14 December 2021, the trial court held a hearing on Plaintiff's Complaint and Motion for a DVPO. At the start of the hearing, Defendant's counsel moved to dismiss under Rule of Civil Procedure 12(b)(6) because Plaintiff did not contact police after the alleged choking incident, waited five days after the alleged choking incident to file the Complaint, and Plaintiff made "no allegation of any personal knowledge . . . that she knows" about the car keying incident. Plaintiff's attorney responded

---

[1] It is not entirely clear which judge issued the *ex parte* DVPO because only a signature, which was illegible, was required and the name was not printed or typed. But the signature on the *ex parte* DVPO appears to be different from Judge Wigmore's, so it appears a different trial judge granted the *ex parte* DVPO.

Plaintiff had alleged "on October 8 the Defendant physically assaulted her. Which is defined by the 50B Statute as an act of domestic violence. Which she's here to testify to." Plaintiff's attorney also argued the domestic violence statutes do not have "a requirement . . . as to when" complaints are filed and Plaintiff's testimony would "address" the "five-day lag."

¶ 6　　　　After hearing those arguments, the trial court made an oral ruling dismissing Plaintiff's Complaint:

> The problem I got is in her own writing. I mean, it happens on the eighth, and there's a delay. And people have delays for many reasons. Ability to get to the courthouse. Seeking legal counsel. Trying to decide what they want to do, if they should go forward or not. But, then, her own words at the bottom of page 2, her car gets keyed. There's nothing to show evidence that in this document that there's a police report. That there's anything that she knows this individual keyed the car. But the most important part of the whole document is, "at this point, I am starting to get scared of him." So that says on October 8, she wasn't scared of him. So that goes back to explain why nothing was done on the eighth. And that's basically the essential paragraph to go forward is the allegation of domestic violence that in it, you know, is fear of it happening again. So, based on the Motion, the 12(b)(6) Motion on the four corners of the complaint, I'm going to dismiss this action.

¶ 7　　　　Following that ruling, Plaintiff's attorney again argued Plaintiff's testimony would explain the delay. The trial court responded because it was a motion on the pleading, "the pleading itself has to prove the domestic violence." Plaintiff's attorney countered the domestic violence statute requires only showing "the Defendant

attempted or physically caused bodily injury" and "[f]ear is not an element." The trial court ended the hearing at that time by saying it had already dismissed the Complaint.

¶ 8 On the same day as the hearing, 14 December 2021, the trial court entered a written order dismissing Plaintiff's Complaint based on Rule 12(b)(6) and voiding the *ex parte* order as a result. Plaintiff filed written notice of appeal on or about 12 January 2022.

## II. Analysis

¶ 9 Plaintiff argues on appeal "the Complaint alleges the necessary elements sufficient for a claim under Chapter 50B." (Capitalization altered.) Specifically, Plaintiff contends "the allegations in the complaint that Defendant choked [her] are sufficient to state a claim upon which relief may be granted under N.C. Gen. Stat. § 50B-1(a)(1)" and the allegations "Defendant had threatened [her] and she was afraid state a claim upon which relief may be granted under N.C. Gen. Stat. § 50B-1(a)(2)." (Capitalization altered.)

¶ 10 Plaintiff also argues "under notice pleading, the complaint provided Defendant sufficient notice of the nature and basis for [her] claim for a" DVPO. (Capitalization altered.) Specifically, Plaintiff asserts Rule of Civil Procedure 8 "does not require detailed fact-pleading in Chapter 50B complaints so long as the pleading provides sufficient notice of the nature and basis of the claim" and she has met that

requirement. This argument mirrors Plaintiff's contention her Complaint states a claim because Rule 12(b)(6) serves to test whether a pleading has met the requirements of Rule 8. *See Westover Products, Inc. v. Gateway Roofing Co., Inc.*, 94 N.C. App. 63, 70, 380 S.E.2d 369, 374 (1989) (setting out requirements of Rule 8 and then stating "[t]he first avenue by which a party may properly address the failure to state a claim is through Rule 12(b)(6)"); *see also Quackenbush v. Groat*, 271 N.C. App. 249, 256, 844 S.E.2d 26, 31 (2020) (addressing together arguments on the "sufficiency" of a claim "for purposes of Rule 12(b)(6) and notice pleading" under Rule 8). Thus, the question before us is only whether Plaintiff stated a claim sufficient to survive a Rule 12(b)(6) motion to dismiss because that covers her Rule 8 argument as well.

¶ 11     When reviewing a Rule 12(b)(6) motion, the issue is

> whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim.

*Quackenbush*, 271 N.C. App. at 251, 844 S.E.2d at 28 (citation and quotation marks omitted). This Court reviews a Rule 12(b)(6) dismissal of a claim *de novo*. *Holton v. Holton*, 258 N.C. App. 408, 416, 813 S.E.2d 649, 655 (2018). When conducting this review, we must remember "[o]ur 'system of notice pleading affords a sufficiently

liberal construction of complaints so that few fail to survive a motion to dismiss." *Id.*

(quoting *Wray v. City of Greensboro*, 370 N.C. 41, 46, 802 S.E.2d 894, 898 (2017)).

¶ 12        In the context of seeking a DVPO specifically, the statutory requirements for

a complaint are as follows:

> Any person residing in this State may seek relief under this
> Chapter by filing a civil action or by filing a motion in any
> existing action filed under Chapter 50 of the General
> Statutes *alleging acts of domestic violence against himself
> or herself or a minor child who resides with or is in the
> custody of such person.*

N.C. Gen. Stat. § 50B-2(a) (2021) (emphasis added).  Allegations of domestic violence

include

> the commission of one or more of the following acts upon
> an aggrieved party or upon a minor child residing with or
> in the custody of the aggrieved party by a person with
> whom the aggrieved party has or has had a personal
> relationship, but does not include acts of self-defense:
> > (1) Attempting to cause bodily injury, or
> > intentionally causing bodily injury; or
> > (2) Placing the aggrieved party or a member of the
> > aggrieved party's family or household in fear of
> > imminent serious bodily injury or continued
> > harassment, as defined in G.S. 14-277.3A, that rises
> > to such a level as to inflict substantial emotional
> > distress; or
> > (3) Committing any act defined in G.S. 14-27.21
> > through G.S. 14-27.33.

N.C. Gen. Stat. § 50B-1(a) (2021).

¶ 13        Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint seeking

a DVPO must allege (1) the plaintiff resides in North Carolina, (2) the plaintiff and the defendant have or have had a "personal relationship," and (3) the defendant has committed an act of domestic violence as defined in § 50B-1(a)(1)–(3). N.C. Gen. Stat. §§ 50B-1(a), -2(a) (2021). The first two requirements are not in dispute. Plaintiff clearly pled them in the first two paragraphs of the Complaint when she listed her county of residence in North Carolina and checked the box indicating she and Defendant "are persons of the opposite sex who are in or have been in a dating relationship." The only question before us is whether the Complaint adequately pled Defendant committed an act of domestic violence.

¶ 14 Here, the Complaint adequately pled such an act of domestic violence. Accepting the Complaint's allegations as true, the 8 October incident where Defendant "choked" Plaintiff "after an argument" aligns with the plain language of § 50B-1(a)(1) because it involved either "attempting to cause bodily injury, or intentionally causing bodily injury." N.C. Gen. Stat. § 50B-1(a)(1). This alleged incident also resembles the only binding precedent applying § 50B-1(a)(1). In *In re A.L.T.*, this Court employed the definition of domestic violence from § 50B-1(a) when reviewing an argument the trial court had mischaracterized a father's actions as domestic violence in a child protection case. *See In re A.L.T.*, 241 N.C. App. 443, 448–50, 774 S.E.2d 316, 319–20 (2015) (applying definition under heading on "Adjudication of Neglect"). Specifically, the *In re A.L.T.* Court found the father's

actions were "properly characterized" as domestic violence under § 50B-1(a)(1) when he "struck" one child and "hit" another "in the mouth, causing her to suffer a busted lip." *Id.* at 450, 774 S.E.2d at 320. Here, the alleged choking incident resembles the strikes in *A.L.T.* in scope and force. *See id.*

¶ 15        As Plaintiff argues on appeal, her Complaint included other allegations such as Defendant threatening Plaintiff with a gun in the past and carving an insulting epithet on her car causing Plaintiff to fear for her life. Those allegations, which we must take as true for purposes of review of the ruling on a motion to dismiss, do tend to support Plaintiff's request for a protective order and may be relevant to a trial court's ultimate determination as to the terms of the DVPO, but we do not need to address them to review the trial court's decision to grant Defendant's motion to dismiss. Plaintiff only needed to allege one act of domestic violence, and the choking incident alone meets the pleading requirement as already discussed. *See* N.C. Gen. Stat. §§ 50B-1(a) ("Domestic violence means the commission of *one or more of the following acts . . . .*" (emphasis added)).

¶ 16        The trial court's stated reasoning for granting the motion to dismiss also indicates the trial court failed to apply the appropriate analysis for a motion to dismiss under Rule 12(b)(6). Instead of taking the allegations of the Complaint as true, as required for purposes of a motion to dismiss, *see Quackenbush*, 271 N.C. App. at 251, 844 S.E.2d at 28, the trial court's comments tend to indicate that it both

imposed a legal requirement not found in Chapter 50—a specific timing requirement for the Plaintiff's fear—and made a credibility assessment of the allegations without hearing any testimony from Plaintiff. The trial court primarily focused on Plaintiff's "delay" in filing the Complaint after the October 8 choking incident. Specifically, the trial court believed Plaintiff delayed filing the pleading because she was not scared of Defendant on October 8 since she wrote, immediately after detailing the October 12 car keying incident, "*At this point I am starting to get scared* of what [Defendant] might do to me." (Emphasis added.) The trial court then indicated the lack of fear after the October 8 incident was an issue because "basically the essential paragraph to go forward is the allegation of domestic violence that in it, you know, is fear of it happening again."

¶ 17 The trial court erred in its reasoning about the delay in filing in several ways. First, fear is not an element Plaintiff was required to plead. Plaintiff only had to plead: she resided in the State; she had a personal relationship with Defendant; and Defendant had committed an act of domestic violence. N.C. Gen. Stat. §§ 50B-1(a), -2(a). While fear is part of the definition of some of the possible acts of domestic violence, *see* N.C. Gen. Stat. § 50B-1(a)(2) ("Placing the aggrieved party . . . in fear of imminent serious bodily injury or continued harassment . . . ."), it is not part of the definition in § 50B-1(a)(1). *See* N.C. Gen. Stat. § 50B-1(a)(1) ("Attempting to cause bodily injury, or intentionally causing bodily injury."). And as we have already

discussed, the alleged choking incident falls under § 50B-1(a)(1). Second, even if an allegation of fear were required, Plaintiff wrote she was "afraid for [her] life" and was "starting to get scared of what he might do to" her. Plaintiff also checked the box on the form indicating she "believe[d] there [was] danger of serious and immediate injury to me or my child(ren)."

¶ 18 Further, the trial court's focus on the timing of her fear was misguided because it is undisputed Plaintiff pled she was afraid at the time of her Complaint, which is the document reviewed by a Rule 12(b)(6) motion. Finally as to any delay, we take judicial notice of the calendar for the month of October 2021. *See Simpson v. Simpson*, 209 N.C. App. 320, 325–26, 703 S.E.2d 890, 894 (2011) (permitting judicial notice of "the days, weeks, and months of the calendar" (citations and quotation marks omitted)). While the trial court expressed concern about a delay, we note 8 October 2021 was a Friday and Plaintiff filed her Complaint the following Wednesday morning, 13 October 2021. The weekend in between the choking incident and filing of the Complaint might explain part of the delay. It is possible an extended unexplained delay—which would still not include the five day delay here—between an alleged act and filing of a complaint may present an issue if the *only* allegation of domestic violence is under North Carolina General Statute § 50B-1(a)(2), "Placing the aggrieved party or a member of the aggrieved party's family or household in fear of *imminent* serious bodily injury or continued harassment." N.C. Gen. Stat. § 50B-

1(a)(2) (emphasis added). Here Plaintiff alleged a specific incident of choking only five days prior to filing the Complaint, in addition to other allegations—which we must consider as true for purposes of a motion to dismiss, *see Quackenbush*, 271 N.C. App. at 251, 844 S.E.2d at 28, which would tend to indicate an escalation of the threat since the choking occurred. But here, five days, including a weekend, can barely be characterized as a delay.

¶ 19        Beyond its focus on delay, the trial court noted there was "nothing to show evidence that in this document that there's a police report. That there's anything that she knows this individual keyed the car." Chapter 50B does not require a plaintiff to report incidents to police prior to filing a complaint, nor does it require Plaintiff to state in the complaint all the facts and circumstances which led her to believe that Defendant was the person who keyed her car. In addition to the sufficiency of the allegation of the choking incident alone, even without reference to the car keying incident, the trial court did not correctly account for the procedural posture of the case. Since the trial court was addressing a Rule 12(b)(6) motion to dismiss, the court was required to treat *all* the allegations in the Complaint as true. *See Quackenbush*, 271 N.C. App. at 251, 844 S.E.2d at 28 (stating the allegations in a complaint are "treated as true" when reviewing a Rule 12(b)(6) motion). Since the Complaint alleged *Defendant* carved a derogatory epithet into Plaintiff's car, the trial court had to accept that allegation as true when reviewing the motion to dismiss. The

trial court's comments reveal it did not do that. Instead, the trial court proceeded to make an evaluation of Plaintiff's credibility and the weight of her evidence, based on the bare allegations of the Complaint. If the trial court had held a hearing and heard all the evidence, it then would have the duty to consider the credibility and weight of the evidence and could make finding of fact accordingly, *see, e.g., Stancill v. Stancill*, 241 N.C. App. 529, 543, 773 S.E.2d 890, 899 (2015) ("[d]eferring to the trial court on the issue of credibility" based on the plaintiff's testimony she feared for her life and finding competent evidence to support its determination the plaintiff suffered substantial emotional distress because of the defendant's actions), but for purposes of a motion to dismiss, the allegations must be taken as true. *See Quackenbush*, 271 N.C. App. at 251, 844 S.E.2d at 28.

### III.   Conclusion

After our *de novo* review, the trial court erred in granting Defendant's motion to dismiss under Rule 12(b)(6). Plaintiff pled all the required elements in her Complaint, including an act of domestic violence under North Carolina General Statute § 50B-1(a)(1) because she pled Defendant choked her. Therefore, we reverse the trial court's order dismissing Plaintiff's Complaint and remand for further proceedings.

REVERSED AND REMANDED.

Judges HAMPSON and JACKSON concur.