INMAN, Judge.
 

 *623
 
 In this case of first impression, we hold that the time period for a biological parent to revoke a consent to adoption of her child, as allowed by North Carolina statute, does not begin to run until the parent is provided an original or copy of a written consent signed by her.
 

 Petitioner-appellants George and Laura Ivey (the "Iveys") appeal from an order (the "Order") in a consolidated declaratory judgment action and adoption proceeding dismissing the Iveys' adoption proceeding and restoring custody of minor child A.M.S. (the "Baby") to respondent-appellee S.M.S. ("Mother").
 
 [1]
 
 After careful review, we affirm the trial court's order.
 
 [2]
 

 I.
 
 Procedural and Factual History
 

 The record discloses the following:
 

 In early 2015, the Iveys, who wished to adopt a child, engaged an adoption agency social worker to perform a domestic pre-placement assessment in preparation for a private adoption proceeding. In the summer of 2016, the Iveys met the then-pregnant Mother, a 15-year old minor from Tennessee, who agreed to pursue an open adoption with the
 
 *624
 
 Iveys as the adoptive parents of the Baby. Consistent with that plan, the parties executed an Open Adoption Agreement and a Birth Plan setting forth visitation, birthing details, and other provisions establishing the level of care and contact the Iveys and Mother would exercise toward the Baby and each other during delivery and following the adoption of the Baby by the Iveys.
 

 Mother gave birth to the Baby on 31 August 2016. On 1 September 2016, Mother met with Pam Smith, an attorney hired by the Iveys to represent Mother in the adoption of the Baby, and Samuel Hyde, a notary, at the hospital. Mother signed an Affidavit of Parentage and Consent to Adoption (the "Consent") in the presence of Ms. Smith and Mr. Hyde.
 
 [3]
 
 The Consent includes an acknowledgment by Mother that she had the opportunity to employ independent legal counsel and the recitation "[t]hat I understand that my Consent to the adoption of the minor may be revoked within 7 days following the day on which it is executed, inclusive of weekends and holidays." By the terms of the Consent, notice of revocation of the Consent was to be sent to the Haywood County Clerk of Superior Court. The final paragraph of the Consent contains the acknowledgment by Mother
 
 *743
 
 "[t]hat I understand that unless revoked in accordance with [N.C. Gen. Stat. §] 48-3-608, my Consent to Adoption is final and irrevocable and may not be withdrawn or set aside except under a circumstance set forth in [N.C. Gen. Stat. §] 48-3-609."
 

 Mr. Hyde, who notarized the documents, also signed a certification attached to the Consent that "to the best of [his] knowledge and belief" Mother "read, or had read to ... her, and understood the Consent; signed the Consent voluntarily; received an original or copy of ... her fully executed Consent; and was advised that counseling services may be available through county departments of social services or licensed child-placing agencies." Ms. Smith, the attorney hired to counsel Mother, told Mother to contact her should she have questions. The Iveys then took the Baby home from the hospital.
 

 After executing the Consent, Mother began to have second thoughts about the adoption. On Friday, 9 September 2016, eight days after signing the Consent, Mother called Ms. Smith regarding the Consent and, per a later letter to the Iveys' attorney, sought to "start this process [of
 
 *625
 
 revoking the Consent]...." On 12 September 2016, the first business day following Mother's call to her office, Ms. Smith contacted Mother. The following day, Mother retained attorney Caleb Decker to represent her in future attempts to regain custody of the Baby.
 

 On 14 September 2016, the day after hiring Mr. Decker, Mother delivered a letter to the Iveys' attorney stating that she: (1) was revoking the Consent; and (2) had never received a copy of that document. An affidavit attesting to these facts was delivered to the Iveys' attorney on 19 September 2016. Mother's father, as her guardian, filed a verified complaint on 21 September 2016 in district court seeking a declaratory judgment and injunction declaring the Consent invalid and returning custody of the Baby to her (the "DJ Action").
 

 Following the filing of the DJ Action, on 29 September 2016, Mother received a copy of the Consent from her medical file at the hospital. On 3 October 2016, the Iveys filed a petition for adoption of the Baby with the district court (the "Petition"). On 4 October 2016, Mother filed a revocation with the clerk of superior court. The DJ Action and Petition were consolidated by a
 
 sua sponte
 
 order of the district court.
 

 Counsel for the parties presented evidence and arguments in a hearing before the district court on 7 November 2016. After taking the matter under advisement, the court entered its Order on 15 November 2016 dismissing the adoption proceeding. In the Order, the trial court found as facts:
 

 47. That the Court cannot find that Ms. Smith left a copy of the signed consent with [Mother].
 

 ...
 

 49. That the Respondent Mother did not receive a copy of her signed consent until 29 September 2016.
 

 50. That at no point after 1 September 2016 when Ms. Smith left [Mother's] hospital room until 29 September 2016 did the [Mother] have a copy of her signed consent.
 

 51. That the [Mother] filed a revocation within seven days of receiving her copy of the adoption documents, including the [Consent], and upon being properly noticed and informed of the person and location as to where to send notice of revocation as required by [N.C. Gen. Stat.] § 48-3-605, and further filed this revocation within the seven day period pursuant to [N.C. Gen. Stat.] § 48-3-608.
 

 *626
 
 52. That the leaving of a copy of the signed consent with the consenting parent is required pursuant to
 
 N.C. Gen. Stat. § 48-3-605
 
 .
 

 Based on these findings, the trial court concluded as a matter of law:
 

 4. That the [C]onsent at issue was validly executed.
 

 5. That [N.C. Gen. Stat.] § 48-3-605 requires that a copy of the executed consent be left with the consenting person in order for the consenting person to have notice of how to revoke consent, where to revoke consent, and with whom to give notice of the revoking of consent.
 

 ...
 

 *744
 
 8. That [Mother] filed a revocation with the proper party after receiving information as to who the party was for the purposes of revocation pursuant to [N.C. Gen. Stat.] §§ 48-3-607 and 608.
 

 In addition to dismissing the Iveys' adoption petition, the trial court awarded legal and physical custody of the Baby to Mother and ordered the Iveys to immediately remit the Baby to her custody. The Iveys timely appealed.
 
 [4]
 

 II.
 
 Analysis
 

 The Iveys challenge findings 51 and 52 of the Order, arguing that the trial court erred as a matter of law in interpreting
 
 N.C. Gen. Stat. §§ 48-3-605
 
 and 48-3-608 to provide that a consent to adoption is not deemed executed until a signed original or copy is delivered to the consenting party and that Mother filed a valid revocation of the Consent within 7 days of receiving a copy of the Consent. The Iveys leave unchallenged, however, the trial court's findings of fact 49 and 50, which established that Mother was not provided with a copy of the Consent at the time it was signed and that she received a copy for the first time less than seven days prior to filing her revocation. Those findings, therefore, are binding on appeal and dispositive of the issue before this Court.
 

 Because we hold that
 
 N.C. Gen. Stat. § 48-3-605
 
 requires (1) that an original or copy of a signed Consent to Adoption be provided to the biological parent who has signed the document and (2) that the time period
 
 *627
 
 allowed by
 
 N.C. Gen. Stat. § 48-3-608
 
 for revocation does not begin to run until the requirements of
 
 N.C. Gen. Stat. § 48-3-605
 
 have been met, we affirm the trial court's order.
 

 A. Standard of Review
 

 We review issues of statutory construction
 
 de novo
 
 .
 
 McKoy v. McKoy
 
 ,
 
 202 N.C. App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010). "In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Legislative purpose is first ascertained from the plain words of the statute."
 
 Elec. Supply Co. v. Swain Elec. Co.
 
 ,
 
 328 N.C. 651
 
 , 656,
 
 403 S.E.2d 291
 
 , 294 (1991) (citations omitted). "[A] statute [that is] clear on its face must be enforced as written."
 
 Bowers v. City of High Point
 
 ,
 
 339 N.C. 413
 
 , 419-20,
 
 451 S.E.2d 284
 
 , 289 (1994) (citation omitted). Courts, in interpreting the "clear and unambiguous" text of a statute, "must give it its plain and definite meaning[,]" as "there is no room for judicial construction[.]"
 
 Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.
 
 ,
 
 322 N.C. 271
 
 , 276,
 
 367 S.E.2d 655
 
 , 658 (1988) (citation omitted). "This is especially true in the context of adoption, which is purely a creation of statute."
 
 Boseman v. Jarrell
 
 ,
 
 364 N.C. 537
 
 , 545,
 
 704 S.E.2d 494
 
 , 500 (2010). In applying the language of a statute, and "[b]ecause the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature carefully chose each word used."
 
 N.C. Dept. of Corr. v. N.C. Med. Bd.
 
 ,
 
 363 N.C. 189
 
 , 201,
 
 675 S.E.2d 641
 
 , 649 (2009). Finally, "we must be guided by the 'fundamental rule of statutory construction that statutes in pari materia, and all parts thereof, should be construed together and compared with each other.' "
 
 Martin v. N.C. Dep't of Health and Human Servs.
 
 ,
 
 194 N.C. App. 716
 
 , 719,
 
 670 S.E.2d 629
 
 , 632 (2009) (quoting
 
 Redevelopment Comm'n v. Sec. Nat'l Bank
 
 ,
 
 252 N.C. 595
 
 , 610,
 
 114 S.E.2d 688
 
 , 698 (1960) ).
 

 B. North Carolina's Adoption Statutes
 

 North Carolina's procedures for adoption are codified in Chapter 48 of the General Statutes.
 
 N.C. Gen. Stat. §§ 48-1-100
 
 (2015),
 
 et seq.
 
 Per Section 48-1-100, '[t]he primary purpose of this Chapter is to advance the welfare of minors by (i) protecting minors from unnecessary separation from their original parents...."
 
 N.C. Gen. Stat. § 48-1-100
 
 (b)(1)(i). Further, it is a "[s]econdary purpose[ ] of this Chapter ... to protect biological parents from ill-advised decisions to relinquish a child or consent to the child's
 
 *745
 
 adoption...."
 
 N.C. Gen. Stat. § 48-1-100
 
 (b)(2). The statute goes on to direct that "[t]his Chapter shall be liberally construed and applied to promote its underlying purposes and policies."
 
 N.C. Gen. Stat. § 48-1-100
 
 (d).
 
 *628
 
 Section 48-3-605 sets forth the procedures for the execution of a consent for adoption.
 
 N.C. Gen. Stat. § 48-3-605
 
 . Compliance with these procedures requires that the consent: (1) "be signed and acknowledged under oath before an individual authorized to administer oaths or take acknowledgments[;]" and (2) contain a certification by the notary that includes a statement that "to the best of the [notary's] knowledge or belief, the parent ... executing the consent has ... [b]een given an original or a copy of his or her fully executed consent."
 
 N.C. Gen. Stat. §§ 48-3-605
 
 (a) and (c).
 

 Any consent containing the mandatory provisions of Section 48-3-606 and in accordance with the procedures set forth in Section 48-3-605 "may be revoked as provided in [N.C. Gen. Stat. §] 48-3-608. A consent is otherwise final and irrevocable except under a circumstance set forth in [N.C. Gen. Stat. §] 48-3-609."
 
 N.C. Gen. Stat. § 48-3-607
 
 .
 

 A revocation of consent to adoption pursuant to Section 48-3-608 generally must be completed within seven days following the consent to adoption's execution,
 
 [5]
 
 while a consent may be voided pursuant to Section 48-3-609 if it is "established by clear and convincing evidence that it was obtained by fraud or duress[,]" the adoptive parents and consenting person agree to set aside the consent, the adoption petition is voluntarily dismissed with prejudice, or the adoption petition is dismissed and any rights to appeal the dismissal are either not exercised or exhausted.
 
 N.C. Gen. Stat. §§ 48-3-608
 
 and 48-3-609.
 

 C. Mother's Revocation Was Timely
 

 The Iveys argue that the trial court erred as a matter of law in concluding that " [N.C. Gen. Stat.] § 48-3-605 requires that a copy of the executed consent be left with the consenting person" and, as a result, it erred in concluding that the revocation of the Consent was timely filed because it was filed within seven days of Mother's receipt of a copy of the Consent on 29 September 2016. We disagree.
 

 Section 48-3-605 envisions the receipt of an original or copy of the signed consent to adoption by the person executing it. While the statute does not expressly require such receipt, the legislature's language anticipates just such a delivery by requiring the notary to certify that "to the best of the individual's knowledge ... [the consenting party has b]een given an original or a copy of his or her fully executed consent."
 
 N.C. Gen. Stat. § 48-3-605
 
 (c)(3). Actual receipt of an original or copy of the
 
 *629
 
 signed consent is further contemplated by Section 48-3-608(a), which requires that a written revocation be delivered "to the person specified in the consent."
 
 N.C. Gen. Stat. § 48-3-608
 
 (a). Additionally, Section 48-3-606 requires that the consent contain "[t]he name of a person and an address where any notice of revocation may be sent" so that the procedure for revocation in Section 48-3-608(a) may be accomplished.
 
 N.C. Gen. Stat. § 48-3-606
 
 . Construing the language of Section 48-3-605
 
 in pari materia
 
 with the revocation requirements in Section 48-3-608, the content requirements of Section 48-3-606, and the underlying purposes of the adoption regime set forth in Section 48-1-100 demonstrates the intent of the legislature that a biological parent consenting to adoption receive, as a matter of fact, an original or copy of the signed consent in order for it to be effectuated.
 

 Taking the provisions of Section 48-3-605 to mean that a consent is "executed" when it is signed by the consenting parent and certified and notarized by a notary, the Iveys further argue that Mother's revocation was time barred by Section 48-3-608 irrespective of when she received an original or copy of the Consent because the time for revocation is calculated from the date of execution, not receipt, of the written consent. We decline to adopt such a narrow interpretation of the word "executed" in this context.
 

 *746
 
 As recently reiterated by our Supreme Court:
 

 [W]here a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.
 

 State v. Holloman
 
 ,
 
 369 N.C. 615
 
 , 628,
 
 799 S.E.2d 824
 
 , 832-33 (2017) (quoting
 
 Mazda Motors of Am., Inc. v. Sw. Motors, Inc.
 
 ,
 
 296 N.C. 357
 
 , 361,
 
 250 S.E.2d 250
 
 , 253 (1979) ) (internal quotation marks and citation omitted). Adopting the strict interpretation of the word "executed" advocated by the Iveys would create just such an absurd result, leaving a consenting parent who never received an original or copy of the signed consent without written notice as to whom to deliver the necessary written revocation.
 
 N.C. Gen. Stat. § 48-3-608
 
 (a). Such an interpretation would frustrate the very purpose of the revocation procedure, which is inseparable from the intent of the adoption scheme established by law.
 
 See, e.g.,
 

 In re Adoption of P.E.P.
 
 ,
 
 329 N.C. 692
 
 , 704,
 
 407 S.E.2d 505
 
 , 511 (1991) ("The procedural safeguards provided in the adoption statutes are not mere window dressing-they serve to protect the interests of the parties, the child, and the public."). Keeping in mind the plain language of Sections 48-1-100, 48-3-605, and 48-3-608 as set forth
 
 supra
 
 , we reject a reading of
 
 *630
 
 the relevant statutes that would lead to a result contrary to the legislature's intent. Rather, we hold that the time for revocation under Section 48-3-608(a) does not begin to run until an original or copy of the signed consent is actually delivered to the consenting parent consistent with the provisions and purposes of Section 48-3-605.
 

 We recognize that another primary purpose of the adoption statutes is to "assur[e] the finality of the adoption."
 
 N.C. Gen. Stat. § 48-1-100
 
 (b)(1)(iv). However, the legislature's statement of multiple primary purposes of these statutes requires that all purposes be respected. Our interpretation of the statutes to require actual delivery of an original or copy of the consent to the consenting parent in order to trigger the time period for revocation does not run counter to this purpose because the professionals responsible for ensuring delivery are in a better position than the biological parent to establish proof of compliance. Nor does it enlarge or expand the timeframe in which a parent may revoke as a matter of law. It instead recognizes the legislature's intention that: (1) a consenting parent receive the necessary information in order to revoke her consent by receiving an original or copy; and (2) the consenting parent have seven days to revoke once such information is furnished in compliance with the law.
 

 Applying the above understanding of the law to the facts of the case, we hold that the trial court did not err in concluding that Mother's revocation was timely. The trial court determined from the evidence that it could not find that Ms. Smith left a copy of the signed consent with Mother, and the trial court found that "Mother did not receive a copy of her signed consent until 29 September 2016." It further found that Mother submitted a notice of revocation within seven days of her receipt of a copy of the Consent. None of these findings was challenged by the Iveys on appeal. They are therefore conclusive. Because we hold that Section 48-3-605 requires actual delivery of an original or copy of the signed consent to the biological parent and the time for revocation in Section 48-3-608(a) does not begin to run until such delivery is accomplished, the trial court did not err in concluding Mother's revocation was timely.
 

 The trial court's findings were supported by substantial evidence. Mother testified under oath that she did not receive an original or copy of the Consent at the time it was signed. Her former foster parent, who was with Mother at the hospital on the night the Consent was signed, also testified that Mother had not received an original or copy. Mother's attorney testified that she "believed" she left a copy of the Consent with Mother at the time it was signed based on her general practice, but she
 
 *631
 
 could not testify with certainty that she had done so. The Iveys did not testify, nor did the notary who signed the certification attached to the Consent. In fact, the Iveys called no witnesses
 
 *747
 
 whatsoever, and the trial court only heard testimony from the above three witnesses. The judge, sitting as the finder of fact, had the opportunity to hear and evaluate fact witnesses within weeks of the event in question. After judging their credibility, he found that Mother, as a matter of unchallenged fact, did not receive an original or copy of the Consent at the time it was signed.
 

 This case does not present the dilemma of a biological parent who first challenges an adoption months or years after consenting to relinquish a child. Mother first sought to revoke her consent just eight days after she signed the Consent and the Iveys took custody of the Baby, when Mother was still in the hospital. She filed a legal challenge to the adoption proceeding less than two weeks later. The trial court heard Mother's testimony and received other evidence less than three months after Mother signed the Consent.
 

 The Iveys present a final argument that the trial court's order is contrary to the Notary Public Act, which provides that "[i]n the absence of evidence of fraud on the part of the notary, or evidence of a knowing and deliberate violation of this Article by the notary, the courts shall grant a presumption of regularity to notarial acts so that those acts may be upheld...." N.C. Gen. Stat. § 10B-99(a) (2015). Specifically, the Iveys contend that the trial court's finding that Mother did not receive a copy of the Consent at the time it was signed despite the notary's certification that "to the best of [his] knowledge and belief ... [Mother] received an original or copy of ... her fully executed Consent" ignored Section 10B-99(a) 's presumption of regularity where there was no evidence of fraud or a knowing and willful violation. We disagree.
 

 The notary certification required by Section 48-3-605 must state only that "
 
 to the best of the [notary's] knowledge or belief
 
 , the parent ... executing the consent has ... [b]een given an original or copy of his or her fully executed consent."
 
 N.C. Gen. Stat. § 48-3-605
 
 (c) (emphasis added). The certification provided by the notary in this case followed this statutory language. Thus, the notary did not certify to
 
 actual
 
 delivery of an original or copy of the Consent to Mother (or actual knowledge thereof), but instead that such delivery had occurred to "the best of [his] knowledge or belief."
 
 See, e.g.,
 

 In re Yopp
 
 ,
 
 217 N.C. App. 489
 
 , 493,
 
 720 S.E.2d 769
 
 , 772 (2011) (noting that the phrase "to the best of my knowledge" in an affidavit is a " 'limitation to the affiant's personal knowledge' " (quoting
 
 Faulk v. Dellinger
 
 ,
 
 44 N.C. App. 39
 
 , 42,
 
 259 S.E.2d 782
 
 , 784 (1979) )). The trial court's finding that Mother did not, as a matter of fact, receive
 
 *632
 
 an original or copy of the Consent at the time it was signed does not, therefore, contradict the certification by the notary. It is entirely possible that: (1) the notary believed or to the best of his knowledge thought an original or copy of the Consent had been left with Mother without any actual knowledge thereof; and (2) no such original or copy had, in fact, been delivered. Unlike Mother and her former foster parent, who both testified that Mother did not receive a copy of the Consent on the day she signed it, the notary did not testify before the trial court. Thus, it was entirely appropriate for the trial court to conclude that the notary's certification was valid and proper but that Mother did not receive an original or copy of the Consent, which it did in concluding that "the [C]onsent at issue was validly executed" but that "Mother did not receive a copy of her signed consent until 29 September 2016."
 

 III.
 
 Conclusion
 

 North Carolina statutes clearly contemplate that an original or copy of a signed consent to adoption must be delivered to the consenting parent to commence the time period within which the parent can revoke her consent.
 
 N.C. Gen. Stat. §§ 48-3-605
 
 (c)(3) and 48-3-606(5). We must vindicate this intention in interpreting and applying these statutes. In light of the purposes of the adoption statutes and the intention of the legislature evinced in the above statutes, the trial court did not err in concluding that the biological Mother's revocation of her consent to adoption was timely.
 

 AFFIRMED.
 

 Judges BRYANT and DAVIS concur.
 

 [1]
 

 Because both the Baby and Mother are minors, we refer to them by pseudonyms in the interest of privacy.
 

 [2]
 

 The Iveys' notice of appeal states that they also appeal from a second order denying their motion to stay or vacate the prior Order. However, the Iveys assert no argument in their briefs concerning the order on their motion to stay or vacate, and their appeal as to that order is therefore deemed abandoned. N.C. R. App. P. 28(a) (2015).
 

 [3]
 

 While Mother is a minor, her age has no bearing on the enforceability or validity of the Consent;
 
 N.C. Gen. Stat. § 48-3-605
 
 (b) (2015) states "[a] parent who has not reached the age of 18 years shall have legal capacity to give consent to adoption and to release that parent's rights in a child, and shall be as fully bound as if the parent had attained 18 years of age."
 

 [4]
 

 The Iveys filed a motion to stay the Order pending appeal, which was denied by the trial court. Thus, it appears from the record that Mother has had custody of Baby since entry of the Order.
 

 [5]
 

 Section 48-3-608 provides for an alternative timeframe for revocation in certain factual situations that are not present in this appeal.
 
 N.C. Gen. Stat. § 48-3-608
 
 (b).