IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-782

Filed 18 April 2023

New Hanover County, No. 18CVD4048

ELIZABETH GOURLEY READ, Plaintiff,

v.

BRENDEN MICHAEL READ, Defendant.

Appeal by Defendant from final Order and Judgment entered 8 February 2022 by Judge Robin W. Robinson in New Hanover County District Court. Heard in the Court of Appeals 21 February 2023.

*The Lea/Schultz Law Firm, P.C., by Ryan B. Schultz, for Defendant-Appellant.*

*No brief filed by Plaintiff-Appellee.*

RIGGS, Judge.

Defendant-Appellant Brenden Michael Read appeals the final order and judgment of equitable distribution entered by the Honorable Robin W. Robinson in New Hanover County District Court. After careful consideration, we affirm.

## I.  Facts & Procedural History

Defendant-Appellant married Plaintiff-Appellee Elizabeth Gourley Read on 16 June 1990 in Raleigh, North Carolina. A year after they married, in May 1991, Plaintiff-Appellee decided to attend Parker Chiropractic School in Dallas, TX and the couple relocated to Dallas while she attended school. When she applied to school, the

parties were working at restaurants and like many college students could not afford college tuition without student loans. Therefore, they decided to take out loans to cover both the cost of tuition and their living expenses.

While Plaintiff-Appellee was attending chiropractic school, Defendant-Appellant took a job opening a new restaurant in Oklahoma City and he temporarily relocated to Oklahoma. During this time, the couple had their first child, a son, born in mid-1992. After two years in Oklahoma, Defendant-Appellant returned to Dallas where he worked at a restaurant and a carpet cleaning business while Plaintiff-Appellee completed chiropractic school. The couple also had a second son born in 1994. To pay for school and to support their growing family, the parties took out loans exceeding the cost of tuition every trimester between March 1991 and May 1995.

Overall, the couple took out $193,981.40 in loans. The total cost of tuition and books for Plaintiff-Appellee to attend chiropractic school was $49,173. According to Plaintiff-Appellee's testimony, the couple used the balance of the funds for living expenses such as room and board, daycare for the children, diapers, and long-distance telephone bills between Dallas and Oklahoma. The majority of the loans were taken out in Plaintiff-Appellee's name; however, Defendant-Appellant co-signed for a few loans.

After Plaintiff-Appellee's graduation in 1995, the family returned to Raleigh, where both Plaintiff-Appellee and Defendant-Appellant took jobs as waiters in

restaurants while Plaintiff-Appellee was taking her boards to become a licensed chiropractor in North Carolina. During this time, the parties applied for forbearance to delay the repayment of these loans. After passing her boards in 1996, Plaintiff-Appellee bought North Hill Chiropractic and began running a single-person chiropractic business. Plaintiff-Appellee used the chiropractic business to support the family, but the business only netted between $16,000 and $25,000 annually. The couple also had a third child in 1996.

In 1999, Defendant-Appellant began working in the chiropractic business as the office manager. Plaintiff-Appellee testified that Defendant-Appellant did not take a paycheck, but he did take draws from the business bank account. The parties continued to take hardship forbearance on the student loans based on their family income.

In September 2001, the parties separated. At the time of separation, the student loan balance was $198,237. When they separated, Defendant-Appellant says the parties each took "tangible and intangible property in their own name and went their separate ways." The record does not include any written agreement on the distribution of marital assets and debts. After the separation, Plaintiff-Appellee consolidated the student loans into one loan. In the seventeen years between the date of separation and the equitable distribution hearing, Plaintiff-Appellee made $61,331 in payments on the loan. Defendant-Appellant did not make any payments on the loan. Due to the terms of the loan and the amount of owed, Plaintiff-Appellee was

unable to make payments on the principal and the payments were only applied to loan interest. The student loan was in delinquency status for many years, and at the time of the equitable distribution hearing, the balance of the loan had grown to $281,051.

In the year prior to their separation, the parties also had an unpaid tax bill. The bill remained unpaid post separation and grew to $6,774.39 due to penalties. In 2004, the IRS applied $4,351.16 of Plaintiff-Appellee's overpayment of taxes against this tax bill.

Although the parties separated in 2001, neither party filed for absolute divorce after the statutory one-year waiting period. However, they regularly engaged in child custody and child support litigation related to medical expenses for their three children. On 21 November 2018, seventeen years after the parties separated, Plaintiff-Appellee filed a complaint seeking absolute divorce and equitable distribution of the marital estate, which only consisted of marital debt. Defendant-Appellant was served on 8 December 2018. On 8 February 2019, the trial court entered a divorce judgment, while preserving Plaintiff-Appellee's pending claim for equitable distribution.

Seven months later, on 25 July 2019, Defendant-Appellant filed a motion to dismiss, an answer, and affirmative defenses. Defendant-Appellant's motion to dismiss was heard on 3 March 2020. In an order entered 22 June 2020, the trial court denied the motion to dismiss. Prior to the equitable distribution hearing, Defendant-

Appellant failed to respond to discovery requests for several months and Plaintiff-Appellee had to file a motion to compel discovery which was granted in part on 11 February 2021.

Plaintiff-Appellee's equitable distribution claim was heard in a bench trial during the 20 April 2021 family court session in New Hanover County. The trial court entered an order for equitable distribution on 8 February 2022, and the order was served on Defendant-Appellant's attorney by mail the same day.

Defendant-Appellant filed a timely written notice of appeal on 7 March 2022.

## II.     Timeliness of Equitable Distribution Claim

On appeal Defendant-Appellant argues that the trial court erred in entering judgment for Plaintiff-Appellee at the close of evidence because Plaintiff-Appellee's delay in asserting the equitable distribution claim violated the legislative intent of fairness and timeliness in North Carolina's Equitable Distribution statute. We disagree.

### A. Standard of Review

This Court reviews issues of statutory construction *de novo*. *In re Ivey*, 257 N.C. App. 622, 627, 810 S.E.2d 740, 744 (2018).

### B. Analysis

The North Carolina Supreme Court has said that the question of divorce is a matter exclusively of legislative cognizance, and where the legislature has formally and clearly expressed its will, this Court is not at liberty to interpolate or superimpose

conditions and limitations which the statutes do not contain. *Cooke v. Cooke*, 164 N.C. 272, 275, 80 S.E. 178, 179 (1913). In 1981, the North Carolina General Assembly created statutes to address the equitable distribution of marital property and the procedures for courts to follow when making an order for equitable distribution. N.C. Gen Stat. §§ 50-20, -21 (2021). Section 50-21(a) sets out the time at which a claim of equitable distribution accrues:

> *At any time* after a husband and wife begin to live separate and apart from each other, a claim for equitable distribution may be filed and adjudicated, either as a separate civil action, or together with any other action brought pursuant to Chapter 50 of the General Statutes, or as a motion in the cause as provided by G.S. 50-11(e) or (f).

N.C. Gen. Stat. § 50-21(a) (emphasis added).

The legislature placed a clear time limit on a claim for equitable distribution in Section 50-11(e); a spouse's right to equitable distribution under Section 50-20 is extinguished upon decree of absolute divorce unless the right is asserted prior to judgment. N.C. Gen. Stat. § 50-11(e) (2021). An absolute divorce may be granted on application from *either party* if the parties have lived separate and apart for one year . . . and "a divorce under this section shall not be barred to either party. . . ." N.C. Gen. Stat. § 50-6 (2021) (emphasis added). Once a spouse requests equitable distribution, the legislature provided procedures, time limits, and remedies within Section 50-21 and ensures the court rules "upon any matters reasonably necessary to effect a fair and prompt disposition of the case in the interests of justice." N.C. Gen.

Stat. § 50-21. The statutes allow the court to impose appropriate sanctions on a party for unreasonable delay; however, delays to which the parties consent are not grounds for sanctions. N.C. Gen. Stat. § 50-21(e).

In construing statutes, this Court first ascertains the legislative purpose from the plain words of the statute. *McKinney v. Richitelli*, 357 N.C. 483, 487, 586 S.E.2d 258, 262 (2003). Where the language of the statute is clear and unambiguous, there is no room for judicial interpretation, and the court must construe the statute using its plain meaning. *Id.* In applying the language of a statute, the actual words of the legislature are the clearest manifestation of its intent; therefore, we give every word of the statute effect, "presuming that the legislature carefully chose each word used." *In re Ivey*, 257 N.C. App. at 627, 810 S.E.2d at 744. Moreover, according to the canon of *in pari materia*, all parts of a statute should be reconciled with each other when possible and any irreconcilable ambiguity resolved in a manner that fully effectuates the legislative intent. *Martin v. N. C. Dep't of Health & Human Servs.*, 194 N.C. App. 716, 719, 670 S.E.2d 629, 632 (2009). Accordingly, we construe Section 50-21 together with Section 50-11(e) to establish when an equitable distribution claim accrues and when the equitable distribution claim expires.

The equitable distribution statutes provide both parties to a divorce with multiple paths to bring the issue of equitable distribution to a timely and binding resolution. First, Section 50-20(d) allows the parties to craft their own equitable distribution in a written agreement, duly executed and acknowledged on the

distribution of the marital property or divisible property in a manner they deem to be equitable, and that agreement *shall be binding on the parties*. N.C. Gen. Stat. § 50-20(d) (emphasis added). Second, when the parties cannot agree on equitable distribution, as is common in divorce, Section 50-21(a) gives *either party* the right to bring a claim for equitable distribution, as soon as the parties separate, either as a separate civil action or together with any other action brought pursuant to Chapter 50 or as a motion under Section 50-11(e) or (f). N.C. Gen. Stat. § 50-21(a). Finally, after one year of separation, either party can bring a claim for absolute divorce which cannot be barred by either party. N.C. Gen. Stat. § 50-6. An absolute divorce obtained within this State shall destroy the right of a spouse to equitable distribution under Section 50-20 unless the right is asserted prior to judgment. N.C. Gen. Stat. § 50-11(e). While a divorce proceeding is a civil action, it is unlike any other civil action. *Bruce v. Bruce*, 79 N.C. App. 579, 583-84, 339 S.E.2d 855, 859 (1986). Parties are held to strict compliance with statutory requirements and judgment by default is not permitted except as defined in Section 50-6. *Id*. at 584, 339 S.E.2d at 859. The legislative approach allows divorcing parties the flexibility to file for divorce and equitable distribution on a timeline that is appropriate for their unique situation.

Here, Defendant-Appellant argues that the law allowed Plaintiff-Appellee an indefinite amount of time to file a claim for equitable distribution which "unnecessarily disrupts [his] settled expectation of marital property distribution between the spouses." However, the law afforded Defendant-Appellant multiple

paths to bring binding resolution to responsibility for the marital debt. First, when the parties separated, Defendant-Appellant could have drawn up a written and executed agreement for how the parties divided the property and debts. A written, executed, and acknowledged agreement would have been enforceable against a future claim for equitable distribution. Second, Defendant-Appellant had the right to bring a claim for equitable distribution as soon as the parties separated in September of 2001 or as a motion in any of their Chapter 50 litigation. Finally, Defendant-Appellant had the right to bring a claim for absolute divorce as early as 5 September 2002; once the judgment of absolute divorce was entered, any future claim for equitable distribution would have been untimely.

During this seventeen-year period, in which the parties lived separate and apart but had not filed for absolute divorce, neither party was released from the bonds of matrimony, nor had they executed a written agreement for equitable distribution. Accordingly, on the facts of this case, neither party should have a reasonable expectation that the distribution of their marital debt was settled. Further, by their conduct in failing to make a claim for absolute divorce or equitable distribution, both parties consented to the delay. Therefore, the claim is not time barred, and does not violate the legislative intent of the Equitable Distribution Statutes.

Accordingly, we affirm the order of the lower court.

### III.    Motion to Dismiss and Statute of Limitations

In the second and third assignment of error, Defendant-Appellant argues the trial court erred when it denied his motion to dismiss. As part of his motion to dismiss and here Defendant-Appellant argues that N.C. Gen. Stat. §§ 1-52 and 56, the three-year statute of limitations and the ten-year statute of limitations, respectively, should apply to claims for equitable distribution. We disagree.

Notably, Defendant-Appellant did not notice appeal of the denial of the motion to dismiss; however, since the motion to dismiss is an interlocutory order involving the merits that necessarily affect the judgment, according to Rule 46 of the Rules of Civil Procedure we have jurisdiction to consider the issue. N.C.R. Civ. P. 46(b) (2022).

## A. Standard of Review

A motion to dismiss under N.C. R. Civ. P. 12 (b)(6) tests the legal sufficiency of the complaint. *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citation omitted). In ruling on the motion, the allegations of the complaint must be viewed as admitted, and on that basis, the court must determine as a matter of law whether the allegations state a claim for which relief may be granted. *Id.*

This Court considers the pleadings *de novo* "to determine their legal sufficiency and whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). When there is no dispute over the relevant facts, a lower court's interpretation of a statute of limitation is a conclusion of law that is

reviewed *de novo* on appeal.  *Goetz v. N.C. Dep't of Health & Human Servs.*, 203 N.C. App. 421, 425, 692 S.E.2d 395, 398 (2010).

**B. Analysis**

North Carolina General Statutes §§ 50-20 and 21 govern claims for equitable distribution, and do not provide a statute of limitation for absolute divorce or equitable distribution claims.  N.C. Gen. Stat. §§ 50-20, -21.  Defendant-Appellant conceded that the equitable distribution statutes are silent on a statute of limitation for an equitable distribution claim.  Further, there are no North Carolina cases barring a claim of equitable distribution due to a statute of limitations.  Defendant-Appellant argues that in the absence of a specific statute, this Court should apply statutes of limitation from N.C. Gen. Stat. §§ 1-52(2) and 1-56, which establish a three-year statute of limitation for liabilities created by statute or a ten-year statute of limitations for all other actions, respectively, to an equitable distribution claim.  N.C. Gen. Stat. §§ 1-52(2), -56.

However, N.C. Gen. Stat. § 50-11(e) provides the statutory limitation on bringing a claim for equitable distribution, requiring that the equitable distribution claim be asserted before the entry of the absolute divorce judgment.  N.C. Gen. Stat. § 50-11(e).  The statutory language is clear: as long as the claim for equitable distribution is pending at the time of the absolute divorce, then the court has jurisdiction over the claim for equitable distribution.  *Bradford v. Bradford*, 279 N.C. App. 109, 120-21, 864 S.E.2d 783, 791 (2021).  The North Carolina General Assembly,

by the plain language of Section 50-11(e), linked the allowable time frame for equitable distribution to the timing of a claim for absolute divorce; an absolute divorce obtained within this State shall destroy the right of a spouse to equitable distribution under Section 50-20 unless the right is asserted prior to the judgment of absolute divorce. N.C. Gen. Stat. § 50-11(e).

In the order from the motion to dismiss hearing, the trial court found that *Bruce v. Bruce* was controlling, and the ten-year statute of limitation outlined in Section 1-56 for "all other actions" does not apply to actions for absolute divorce or equitable distribution. *Bruce v. Bruce*, 79 N.C. App. 579, 583, 339 S.E.2d 855, 858 (1986). In *Bruce v. Bruce*, that defendant argued that an eleven-year gap between the date of separation and the filing of the complaint for absolute divorce and equitable distribution violated the ten-year statute of limitation in Section 1-56. *Id.* at 579, 339 S.E.2d at 856. This Court said that separation as grounds for divorce is a continuing offense. *Id.* at 582, 339 S.E.2d at 858. It begins when the parties physically separate with the requisite intention for the separation to remain permanent and continues to accrue so long as the parties remain separate and apart within the meaning of the statute. *Id.* The Court balanced the reasons for having statute of limitations against the State's public policies of endeavoring to maintain the marital state and the need to allow divorce for parties that have demonstrated a ground for divorce, concluding that the residuary statute of limitations in Section 1–56 does not apply to actions for divorce. *Id.* at 583, 339 S.E.2d at 858-59. Since the

allowable time frame for equitable distribution and divorce are linked, and a claim for divorce is not barred by a statute of limitations, a claim for equitable distribution also cannot be barred by a statute of limitations.

Defendant-Appellant cites *Lawing v. Lawing* to support his contention that a statutory goal of N.C. Gen. Stat § 50-20 is to wrap up marital affairs fairly with as much certainty and finality as possible and therefore a statute of limitations should apply to a claim for equitable distribution. *Lawing v. Lawing*, 81 N.C. App. 159, 183, 344 S.E.2d 100, 115 (1986) (highlighting that a policy consideration underlying the Equitable Distribution Act is to distribute marital property fairly and with as much certainty and finality as possible). However, in *Lawing* this Court was interpreting the language of Section 50-20(b)(3) as authorizing the court to make distributive award for periods of "not more than six years after the date on which the marriage ceases." *Id.*, at 184, 344 S.E.2d at 116. The holding was providing a limit *on the court* to avoid extending payment more than six years beyond the date of the equitable distribution order. *Id.* (emphasis added). The facts here are distinguishable because Defendant-Appellant is asking this Court to find that the legislature wanted to limit the time the *parties* have after the date of separation to make the claim for equitable distribution. Our case law does not support such an interpretation.

Additionally, Defendant-Appellant argues a three-year statute of limitation should apply to equitable distribution because, in his view of the equitable distribution statute, it creates a liability by state statute which is covered by N.C.

Gen. Stat. § 1-52(2). However, Defendant-Appellant does not cite case law supporting his argument that Section 1-52 applies to equitable distribution. Further, the argument is not persuasive because the liabilities were not created by the equitable distribution statute; the parties themselves created the liabilities during the marriage. The equitable distribution order simply apportioned responsibilities for those liabilities.

Accordingly, we affirm the order of the trial court denying the motion to dismiss. Additionally, we hold that a claim for equitable distribution was not barred by a statute of limitations under N.C. Gen. Stat. §§ 1-52 or 1-56.

## IV. Distribution of Marital Debt

In the fourth assignment of error, Defendant-Appellant argues that the trial court erred when it ordered him to pay thirty percent of the marital debt. We disagree.

## A. Standard of Review

The General Assembly has committed the distribution of marital property to the discretion of the trial courts, and the exercise of that discretion will not be disturbed in the absence of clear abuse of that discretion. *Lawing v. Lawing*, 81 N.C. App. at 162, 344 S.E.2d at 104. Accordingly, the trial court's ruling in equitable distribution cases receives great deference and may only be upset if it was so arbitrary that it could not have been the result of a reasoned decision. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). The trial court's findings of fact are conclusive

if supported by any competent evidence, even when there is evidence to the contrary. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

**B. Analysis**

An equal division of the marital property is mandatory unless the court determines in the exercise of its discretion that such a distribution is inequitable. *Beightol v. Beightol*, 90 N.C. App. 58, 63, 367 S.E.2d 347, 350 (1988); N.C. Gen. Stat. § 50-20(c). When the court determines that an equal division is not equitable, the court shall divide the marital and divisible property equitably and consider all twelve factors found in Section 50-20(c). N.C. Gen. Stat. § 50-20(c).

To equitably distribute marital property, the trial judge must conduct a three-step analysis: (1) determine what is marital property; (2) determine the net market value of the marital property as of the date of separation; and (3) make an equitable distribution between the parties. *Willis v. Willis*, 86 N.C. App. 546, 550, 358 S.E.2d 571, 573 (1987). This Court has held that in an equitable distribution, the trial court must consider all debts of the parties, whether the debt is one for which the parties are jointly liable or whether a party is individually liable. *Geer v. Geer*, 84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987). For the purpose of an equitable distribution, marital debt is debt that was incurred for the joint benefit of the parties without regard for who is legally obligated for the debt. *Id.* Divisible property includes all passive increases in marital debt, financing charges, and interest related to marital debt. N.C. Gen. Stat. § 50-20(b)(4). North Carolina's equitable distribution statute

expressly provides that professional licenses are separate property; however, the court is required to consider a direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse. N.C. Gen. Stat. § 50-20(b)(2), -20(c)(7).

Here, the marital property at issue is marital debt from the student loans incurred while Plaintiff-Appellee was attending chiropractic school and an IRS debt from the year prior to separation. The debts were itemized on Schedule A of the pretrial order for equitable distribution. As to the student loans, the trial court valued them as of the date of separation on 4 September 2001 to be $198,237. Even though Plaintiff-Appellee made payments of $61,331 on the loans after the date of separation, those payments were only applied to interest and the balance of the loans since separation increased to $281,051 due to unpaid interest. The trial court received evidence at trial that the total cost of tuition and supplies for Plaintiff-Appellee to attend chiropractic school was $49,173, and the balance of the loan was used for living expenses for the parties and their family while Plaintiff-Appellee attended school. The court found that twenty-four percent of the loan was for tuition and seventy-six percent was for the living expenses of the family.

The trial court considered all the factors identified in Section 50-20 in the final order for equitable distribution. The court considered the fact that after Plaintiff-Appellee graduated from chiropractic school, she purchased a chiropractic business in 1996 and the income from that business supported the family until the date of

separation in 2001. Additionally, the chiropractic business employed Defendant-Appellant from 1999 until the date of separation. Because the business supported the family and employed Defendant-Appellant for several years, there is evidence to support a conclusion that Defendant-Appellant benefited from Plaintiff-Appellee's education.

After considering all the factors required in Section 50-20, the trial court determined that an equal distribution would not be equitable. The trial court assigned the cost associated with tuition to Plaintiff-Appellee and divided the balance of the loan between the parties. This approach resulted in an assignment of thirty percent of the current loan balance to Defendant-Appellant and seventy percent of the current loan balance to Plaintiff-Appellee. The trial court did not provide Plaintiff-Appellee with a credit for the $61,331 in interest that she had paid on the student loans since the date of separation.

As to the IRS loan, the court found that the value of the debt as of the date of separation was $6,774.00. The trial court found that Plaintiff-Appellee had paid $4,351 of the outstanding balance and charged Defendant-Appellant with the balance of the debt.

After review of the trial court's order, the findings of fact support the conclusions of law and comply with the procedure established for equitable distribution. The trial court did not abuse its discretion by making an unequal division of the marital debt and assigning thirty percent of the student loan balance

and the outstanding IRS bill to Defendant-Appellant. We affirm the order of the trial court.

## V.    Order of Monthly Payment

In the final assignment of error, Defendant-Appellant argues that the trial court erred when it ordered him to pay one thousand dollars a month towards the marital debt because it failed to make a finding of fact as to his ability to make the payment. We disagree.

## A. Standard of Review

When reviewing an equitable distribution order, the standard of review is limited to a determination of whether there was a clear abuse of discretion. *Petty v. Petty*, 199 N.C. App. 192, 197, 680 S.E.2d 894, 898 (2009). A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. *Id.* (citations and quotation marks omitted).

## B. Analysis

Defendant-Appellant argues that the trial court's order does not contain findings of fact that support his ability to make a thousand-dollar monthly payment on the marital loan. This Court has held where a party's ability to pay an award with liquid assets can be ascertained from the record, then the award must be affirmed. *Pellom v. Pellom*, 194 N.C. App. 57, 69, 669 S.E.2d 323, 330 (2008).

Here, at the close of evidence, the trial court asked Defendant-Appellant for input on the distribution associated with the judgment. Defendant-Appellant did not

take any position on the record as to the distribution of his portion of the student loans other than to say that he was unable to make a lump sum payment for his portion of the loan. The trial court made a finding of fact that Defendant-Appellant is employed full-time as a general manager of a restaurant making ninety thousand dollars per year. Additionally, the court found that Defendant-Appellant does not have any child or alimony support obligations arising out of this marriage. We conclude that these findings of fact support the award of monthly payments of one thousand dollars on the loan. We hold that the trial court did not abuse its discretion and affirm the order.

## VI.    Conclusion

After a review of the issues, this Court holds that the claims for absolute divorce and equitable distribution were filed in a timely manner in accordance with North Carolina General Statutes. Additionally, we hold that the trial court did not abuse its discretion when it ordered that Defendant-Appellant be responsible for the balance of the tax bill and for thirty percent of the balance of the student loan. Finally, we hold the court did not abuse its discretion when it ordered Defendant-Appellant to make monthly payments on the loan.


AFFIRMED.

Judges ZACHARY and FLOOD concur.